## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 37220

IN THE MATTER OF JOHN DOE AND )
JANE DOE, MINOR CHILDREN UNDER )
EIGHTEEN YEARS OF AGE. )
-------------------------------------------------------- )   **Boise, December 2010 Term**
IDAHO DEPARTMENT OF HEALTH & )
WELFARE, )   **2011 Opinion No. 23**
 )
    **Petitioner-Respondent,** )   **Filed:  February 25, 2011**
v. )
 )   **Stephen W. Kenyon, Clerk**
JANE DOE I (2009-21), )
 )
    **Respondent-Appellant.** )
.

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County.  Hon. Bryan Kenneth Murray, Magistrate.

Order taking jurisdiction over children pursuant to Child Protective Act, <u>affirmed</u>; decree vesting custody of children in Idaho Department of Health and Welfare, <u>vacated</u>.

Kumm Law Offices, Pocatello, for appellant.  Reed B. Willis argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. James P. Price, Deputy Attorney General argued.

--------------------------------

BURDICK, Justice

Jane Doe's two children (Son and Daughter) were placed in shelter care and foster care after Son was hospitalized for physical injuries inflicted by their father, John Doe.  At the shelter care hearing for each child, John and Jane Doe stipulated to their children being placed in shelter care.  At the adjudicatory hearing held on October 21, 2009, the magistrate placed the children in the legal custody of the Idaho Department of Health and Welfare (the Department).  At the planning hearing held on November 13, 2009, the magistrate court returned the children to Jane Doe's physical custody under an extended home visit effective November 16, 2009, while keeping the children under the legal custody of the Department.  Jane Doe appeals on multiple grounds.  We affirm the magistrate in taking jurisdiction over the children at both the shelter care

1

hearings and the adjudicatory hearing; however, we reverse and vacate the magistrate's order vesting legal custody in the Department upon the conclusion of the adjudicatory hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

John and Jane Doe admitted Son to the hospital on August 26, 2009, suspecting that his leg was broken. X-rays indicated Son had a broken femur and two fractured clavicle bones and that the injuries resulted from at least two separate incidents. Initially, neither parent took responsibility for the injury. On September 29, 2009, law enforcement declared Son to be in imminent danger, and the Bannock County Prosecutor's Office filed a petition under the Child Protective Act (CPA) asking the magistrate court to: (1) determine whether Son should be placed in shelter care; and (2) place Son in the legal custody of the Department. On September 30, 2009, John Doe admitted to the police that he purposely injured Son on multiple occasions due to anger problems he had when Son would not stop crying. John Doe explained that none of the incidents took place in the presence of Jane Doe but that Daughter was present during each incident.

On October 1, 2009, the Bannock County Prosecutor's Office filed a CPA petition asking the magistrate to place Daughter in shelter care, place her in the legal custody of the Department and remove her from her home. In an affidavit attached to the petition, a Department social worker recommend that Daughter be placed in temporary custody, pending a shelter care hearing, due to Son's injuries and the risk of harm to Daughter. That day, the magistrate court ordered that Daughter be taken into the temporary custody of the Department and found that Daughter should be removed from the home in order to protect her welfare, that Daughter's continuation in the home would be contrary to her welfare and that the Department made reasonable efforts to eliminate the need for removal. On October 6, 2009, the magistrate consolidated the children's cases.

The notice for both shelter care hearings sent to John and Jane Doe provided "you have the right to appear at the Shelter Care Hearing and to be represented by legal counsel." On September 30, 2009, the magistrate appointed public defenders to both parents. The order appointing counsel notified Jane Doe that she should call the public defender's office within two days to set up an appointment and stressed the importance of contacting the office in order to be fully represented.

On October 13, 2009, the magistrate issued shelter care orders consistent with the stipulations of the parties, ordering that Daughter and Son be placed in the Department's legal custody until the adjudicatory hearing. On October 15, 2009, the Bannock County Public Defender's Office submitted a motion to withdraw from representing Jane Doe on the ground that it had a conflict of interest because it was representing John Doe. The magistrate granted the motion to withdraw. Also on October 15, Reed Bradley Willis filed a notice of appearance on behalf of Jane Doe.

On October 21, 2009, an adjudicatory hearing was held pursuant to the CPA. Willis appeared as Jane Doe's attorney at the hearing. One of the officers to whom John Doe confessed testified that he thought Jane Doe was aware of Son's injuries but that she did not know how they occurred and that she promptly took Son to the hospital. The magistrate issued a decree on October 28, 2009, vesting legal custody of the children in the Department. The magistrate found that it had jurisdiction over Son because of the abuse inflicted by John Doe and that it had jurisdiction over Daughter pursuant to I.C. § 16-1603(2) because Daughter lived in the same house as Son and was exposed to or was at risk of being a victim of abuse, neglect or abandonment. The magistrate also found that it was contrary to their welfare for the children to remain in the home, that no safety plan was advanced by any party as to how the children could go home and that it was in the children's best interest to vest legal custody in the Department. In deciding to vest legal custody in the Department, the magistrate stated that while there were no allegations or evidence that Jane Doe abused the children, her apparent innocence did not stop the Court from acting to protect the children. The magistrate ordered the Department to make reasonable efforts to return the children to Jane Doe.

On November 10 and 13, 2009, the magistrate held disposition hearings pursuant to the CPA. While the magistrate kept the children in the Department's legal custody, the magistrate ordered an immediate thirty-day extended home visit for the children. On December 9, 2009, at the Case Plan Review Hearing, the magistrate extended the home visit from thirty days to sixty days. Jane Doe appealed to this Court.

## II. STANDARD OF REVIEW

The Supreme Court reviews the magistrate court record to determine whether there is substantial, competent evidence to support the magistrate's findings of fact and whether the

3

magistrate's conclusions of law follow from those findings. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008).

A "decision will be upheld if it appears that the trial court (1) correctly perceived the issue as discretionary, (2) acted within the boundaries of its discretion and consistent with the applicable legal standards, and (3) reached its determination through an exercise of reason." *Eby v. State*, 148 Idaho 731, 734, 228 P.3d 998, 1001 (2010).

### III. ANALYSIS

**A. The magistrate did not violate Jane Doe's right to counsel at the shelter care hearings.**

Jane Doe argues that the magistrate violated her right to counsel at both shelter care hearings. Jane Doe acknowledges that the magistrate appointed counsel to her for both cases, but she claims that she was never given a meaningful opportunity to exercise that right because she was not afforded an opportunity to meet with her attorney and seek legal advice prior to stipulating to each child's placement in shelter care. Constitutional issues are questions of law over which this Court exercises free review. *City of Idaho Falls v. Fuhriman*, 149 Idaho 574, __, 237 P.3d 1200, 1202 (2010).

When a child is taken into shelter care, the court must hold a shelter care hearing within forty-eight hours to determine whether the child should be released or held in shelter care. I.C. § 16-1608. Each parent from whom the child was removed must be given notice of the shelter care hearing, and that notice shall include "that such person is entitled to be represented by legal counsel." I.C. § 16-1615(2). In compliance with I.C. § 16-1615(2), the notices for Son's and Daughter's shelter care hearings were sent to Jane Doe and included the following language, "you have the right to appear at the Shelter Care Hearing and to be represented by legal counsel."

Idaho Juvenile Rule 39(g) provides that at the time of the shelter care hearing, the court must advise the parent of the right to be represented by counsel and, if they are financially unable to hire counsel, of the right to be represented by a court-appointed attorney. At the outset of the Son's shelter care hearing on September 29, 2009, the magistrate had the following exchange with John and Jane Doe:

> COURT: In civil cases, we normally don't appoint attorneys to represent parents, but in child protection cases because it involves a child, parental rights, those types of things, the law allows me to appoint attorneys to represent parents because they are conflict type cases. Are you going to hire your own attorneys to represent you?
>
> [JOHN DOE]: No.

4

> COURT: It would be important to have an attorney. Can you afford an attorney?
>
> [JOHN DOE]: Not right now.
>
> COURT: Okay. Do you want me to appoint an attorney to represent you?
>
> [JOHN DOE]: Yes, sir.
>
> COURT: I can appoint an attorney to represent [you and Jane Doe] or a different attorney to represent each of you individually. Sometimes parents have different opinions as to what should happen.
>
> [JOHN DOE]: Just an attorney for the both of us.
>
> COURT: Okay, and then I'll let that attorney decide if they think after meeting with you that two attorneys would be more appropriate, they can refer it out to a separate. So, I'll appoint a public defender to represent you. I have a booklet for each of you that reviews child protection cases. If you could read that and then review it, it will answer some of your questions and also help you in communicating with your attorney about this proceeding. You do not have attorneys with you here today though. I didn't receive a request or anything for them as was provided in the notice. At this time the State is still requesting shelter care and I have to decide what happens with the child until we can have another hearing. Do [sic] either of you have an objection to [Son] remaining in the custody of the State temporarily until we can fully review this matter?
>
> [JANE DOE]: No, sir.
>
> [JOHN DOE]: No, sir.

The magistrate appointed an attorney to the Does and ordered them to contact the public defender's office within forty-eight hours to meet with their attorney.

At the outset of Daughter's shelter care hearing on October 2, 2009, the magistrate had the following exchange with Jane Doe:

> COURT: . . . [A]s you're aware, an attorney is available. Can I appoint an attorney in this matter?
>
> [JANE DOE]: Not right now, sir.
>
> COURT: You don't want an attorney to represent you?
>
> [JANE DOE]: I do. I might be getting one.
>
> COURT: I appointed you one in the other case.
>
> [JANE DOE]: Okay.
>
> COURT: Remember?
>
> [JANE DOE]: Right.
>
> COURT: You might be getting one different on your own?
>
> [JANE DOE]: Right.

5

COURT: If you do that then you just notify us and we'd release the other attorney.

[JANE DOE]: Okay. Thank you, sir.

COURT: But we'll go ahead and appoint one for you. It would probably be good to appoint separate attorneys for you. Sir, is it agreeable that I appoint an attorney for you?

[JOHN DOE]: Yes, sir.

COURT: Okay. All right. So, we'll appoint a public defender for you in these proceedings. Is the State requesting shelter care today?

WEBSTER: Absolutely, Your Honor.

COURT: As parents, are you objecting to the State's request for shelter care [for Daughter] today?

[JANE DOE]: No, sir.

[JOHN DOE]: No, sir.

The magistrate once again appointed Jane Doe an attorney and ordered her to contact the public defender's office within forty-eight hours.

The magistrate could have been more plain and explicit in communicating to Jane Doe precisely what her right to counsel entailed, such as her right to renew the petition and what her options were prior to her decision at the shelter care hearing. However, we find that the bare minimum requirements for notifying Jane Doe of her right to counsel were met with the written notices and the magistrate's comments at both shelter care hearings.

At Son's shelter care hearing, the magistrate notified Jane Doe that she had a right to counsel, and he appointed counsel for her; however, the magistrate failed to inform Jane Doe that she could meet with her counsel before proceeding with the shelter care hearing. A shelter care hearing may be continued for a reasonable time upon request by the parent. I.C. § 16-1615(4). The magistrate should have also informed the Does that the shelter care hearing could be continued to give them the opportunity to meet with their appointed counsel. As to the second shelter care hearing, which was for Daughter, it would normally have been improper for the court to proceed in the absence of counsel for a parent at a subsequent hearing even if the hearing involved another child. However, in this case, Jane Doe told the court that she was considering hiring another attorney and did not wish to be appointed counsel.

Furthermore, Jane Doe suffered no prejudice in stipulating to shelter care for each child at the shelter care hearings. Shelter care is a place "for temporary care of children pending court

6

disposition or placement." I.C. § 16-1602(32). If, upon completion of the shelter care hearing, the court orders shelter care, it must schedule an adjudicatory hearing to be held "as soon as possible, but in no event later than thirty (30) days from the date the petition was filed." I.C. § 16-1615(6). At the adjudicatory hearing, the court determines whether the child can go home, requires protective supervision or shall be put in the Department's custody. I.C. § 16-1602(4). Jane Doe was represented by counsel very shortly after the shelter care hearings. She was also represented at the adjudicatory hearing, at which the magistrate vested legal custody in the Department.

**B. The magistrate was permitted to take jurisdiction over the children, even though the allegations of abuse were against only one parent.**

Jane Doe argues that in order to take jurisdiction over a child, the CPA requires a court to find jurisdictional grounds as to both parents, at least when the child is being removed from the care of both parents. Jane Doe argues that it was undisputed that she was willing and able to parent the children. While Jane Doe makes a number of due process-related arguments, she clarifies in her Reply Brief that the due process arguments are not an attack on the constitutionality of the CPA but, rather, that the due process arguments support her proposed reading of the CPA.

"The interpretation of a statute is a question of law, over which this Court exercises free review." *State v. Hensley*, 145 Idaho 852, 855, 187 P.3d 1227, 1230 (2008). The statute is viewed as a whole, and the analysis begins with the language of the statute, which is given its plain, usual and ordinary meaning. *Id*. In determining the plain meaning of the statute, "effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant." *State v. Mercer*, 143 Idaho 108, 109, 138 P.3d 308, 309 (2006) (quoting *In re Winton Lumber Co.*, 57 Idaho 131, 136, 63 P.2d 664, 666 (1936)). The plain meaning of a statute will prevail unless the clearly expressed legislative intent is to the contrary or unless the plain meaning leads to absurd results. *Gillihan v. Gump*, 140 Idaho 264, 266, 92 P.3d 514, 516 (2004), *abrogated on other grounds by Gonzalez v. Thacker*, 148 Idaho 879, 231 P.3d 524 (2009). "If the language of the statute is capable of more than one reasonable construction it is ambiguous," and a statute that is ambiguous must be construed with legislative intent in mind, which is ascertained by examining "not only the literal words of the statute, but the reasonableness of the proposed interpretations, the policy behind the statute, and its legislative history." *State v. Yzaguirre,* 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007).

Idaho Code § 16-1603(1) provides:

Except as otherwise provided herein, the court shall have exclusive original jurisdiction in all proceedings under this chapter concerning any child living or found within the state:

(a) Who is *neglected, abused or abandoned by his parents, guardian or other legal custodian*, or who is homeless; or

(b) Whose parents or other legal custodian fails to provide a stable home environment.

(Emphasis added). The magistrate took jurisdiction over Son pursuant to I.C. § 16-1603(1)(a) based on John Doe's abuse of Son, while noting that the there were no allegations that Jane Doe abused, neglected or abandoned Son.

Jane Doe argues that the use of "parents" in subsections (a) and (b) means that the court must find that both parents neglected, abused or abandoned the child or failed to provide a stable home environment. According to Jane Doe, had the Legislature intended the abuse of one parent to suffice, it would have used "a parent" instead of "parents." The Department counters, arguing that the word "parents" includes "parent" and that if the Legislature intended what Jane Doe claims it intended, it would have used something like, "every parent from whom the child was removed." Both interpretations are reasonable under a plain reading of the CPA. Idaho Code § 16-1603(1) is therefore ambiguous as to whether a court has jurisdiction over a child who has been abused by only one parent.

While the preservation of the family unit is one of the stated policies of the CPA, the policy also states, "[a]t all times the health and safety of the child shall be the primary concern." I.C. § 16-1601. Thus, the focus is on the child—whether the child has been abused, neglected or abandoned as defined by statute. The clause "by his parents, guardian or other legal custodian" is aimed at distinguishing instances in which the child has been abused, neglected or abandoned by someone who legally cares for the child from instances in which the child has been abused, neglected or abandoned by a person who is not legally responsible for the child's care. When a child is abused by someone who is legally entrusted to care for him or her, the child's health and safety is at risk such that taking jurisdiction over the child and removing him or her from home is justified.

Jane Doe argues that this interpretation leads to an absurd result, as it permits a court to take a child from his or her home based on the actions of one parent, even when there is another parent who did not take part in the abuse and who is willing and able to care for the child. While

8

we are sympathetic to such a parent, as Jane Doe appears to be, when a child has suffered abuse by a parent, the court must be able to take swift initial action to protect the child. A child might have a deceased parent, a parent outside the court's jurisdiction or a parent that cannot be readily located and contacted, in which case, under Jane Doe's proposed interpretation, the court would be crippled from protecting a child who is being abused by a parent.

Jane Doe's argument brushes over the distinction between a finding of jurisdiction over a child and other actions the court might take pursuant to the CPA, such as removing a child from his or her home and vesting legal custody in the Department. Taking jurisdiction over a child is an initial step under the CPA and does not dictate the ultimate disposition of the case. Under the CPA, the court can keep a child in shelter care only if, upon completion of the shelter care hearing, it is shown that:

> (a) A petition has been filed; *and*
>
> (b) There is reasonable cause to believe the child comes within the jurisdiction of the court under this chapter *and either*:
>
>> (i) The department made reasonable efforts to eliminate the need for shelter care but the efforts were unsuccessful; or
>>
>> (ii) The department made reasonable efforts to eliminate the need for shelter care but was not able to safely provide preventive services; *and*
>
> (c) The child could not be placed in the temporary sole custody of a parent having joint legal or physical custody; *and*
>
> (d) It is contrary to the welfare of the child to remain in the home; *and*
>
> (e) It is in the best interests of the child to remain in temporary shelter care pending the conclusion of the adjudicatory hearing . . . .

I.C. § 16-1615(5) (emphases added). Thus, the court cannot keep the child in shelter care merely upon finding reasonable cause to believe it has jurisdiction over the child. The court must additionally find, amongst other factors, that it is in the child's best interests to remain in shelter care and that the child could not be placed in the care of another parent who has joint legal or physical custody. Similarly, after an adjudicatory hearing, the court can vest legal custody in the Department or other authorized agency only if a preponderance of the evidence at the adjudicatory hearing shows that the court has jurisdiction over the child and that "continuation of residence in the home would be contrary to the welfare of the child and that vesting legal custody with the department or other authorized agency would be in the best interests of the child." I.C. § 16-1619(6).

As to Daughter, the magistrate took jurisdiction pursuant to I.C. § 16-1603(2), which provides:

> (2) *If the court has taken jurisdiction over a child under subsection (1) of this section, it may take jurisdiction over another child living or having custodial visitation in the same household* without the filing of a separate petition if it finds all of the following:
>
> > (a) The other child is living or is found within the state;
> >
> > (b) The other child has been exposed to or is at risk of being a victim of abuse, neglect or abandonment;
> >
> > (c) The other child is listed in the petition or amended petition;
> >
> > (d) The parents or legal guardians of the other child have notice as provided in section 16-1611, Idaho Code.

(Emphasis added). Since the magistrate took jurisdiction over Son pursuant to I.C. § 16-1603(1), the magistrate was authorized to take jurisdiction over Daughter, who lived in the same home and who witnessed John Doe's abuse of Son.

**C. Upon concluding the adjudicatory hearing, the magistrate did not abuse his discretion in determining that the children were within the court's jurisdiction.**

Jane Doe argues that even if the CPA permits a court to take jurisdiction over a child based upon the actions of only one parent, the magistrate abused his discretion in finding the children to be within the court's jurisdiction after the adjudicatory hearing. Pursuant to I.C. § 16-1619(4):

> If a preponderance of the evidence at the adjudicatory hearing shows that the child comes within the court's jurisdiction under this chapter upon the grounds set forth in section 16-1603, Idaho Code, the court shall so decree and in its decree shall make a finding on the record of the facts and conclusions of law upon which it exercises jurisdiction over the child.

The magistrate took jurisdiction over Son pursuant to I.C. § 16-1603(1), which provides in part that the court "*shall* have exclusive original jurisdiction" in all CPA proceedings for a child who meets the relevant criteria. (Emphasis added). Taking jurisdiction over Son was not a discretionary decision; thus, the magistrate did not abuse his discretion in exercising jurisdiction over Son. The magistrate took jurisdiction over Daughter pursuant to I.C. § 16-1603(2), which provides that the court "may" take jurisdiction over a child if specified criteria are met.

Jane Doe acknowledges that the magistrate perceived the decision to exercise jurisdiction over Daughter as a discretionary issue but argues that no findings support finding jurisdiction when Jane Doe was willing and able to care for Daughter and when John Doe was the sole

10

abuser, had been arrested, was held in jail on a $100,000.00 bond and was the subject of a protective order. The court is authorized to take jurisdiction over a child living in the same household as a child over whom the court has taken jurisdiction pursuant to I.C. § 16-1603(1), but only if the court finds, amongst other things, that "[t]he other child has been *exposed to or is at risk of being a victim of abuse*, neglect or abandonment." I.C. § 16-1603(2) (emphasis added).

Following the CPA adjudicatory hearing, the magistrate decreed:

> The Court has jurisdiction over this case in that each child lives or was found in the state of Idaho and because of the physical abuse of [John Doe]. Jurisdiction is taken over [Daughter] because of the court's assertion of jurisdiction over another child, [Son]. [Daughter] was listed in this petition. [Daughter] is living or has custodial visitation in the same household and *has been exposed to or is at risk of being a victim of abuse, neglect or abandonment*.
> The abuse consisted of the father intentionally harming [Son] while angry, fracturing the child's leg. The child was less than two months old at the time of the injury. The harm was not the product of an accident.
> Once there was a finding of abuse on [Son], Idaho Code 16-1603(2) allows this court to take jurisdiction over [Daughter] and this court does so . . . .

(Emphasis added).

While the magistrate could have been more clear in the decree as to why it found Daughter to be exposed to or at risk of being abused, the record supports the magistrate's decision. The police reports admitted during the adjudicatory hearing show that Daughter witnessed John Doe's abuse of Son and, thereby, was exposed to abuse. Furthermore, the same police reports and the testimony at the adjudicatory hearing show that John Doe committed the abuse against Son due to difficulties controlling his anger triggered during normal incidences of parenting, which supports a finding that Daughter was at risk of being a victim of abuse. We hold that the magistrate acted within the bounds of his discretion and through an exercise of reason in taking jurisdiction over Daughter.

**D. The magistrate abused his discretion in vesting legal custody in the Department.**

Upon concluding the adjudicatory hearing, the magistrate vested legal custody of the children in the Department. Jane Doe argues that the magistrate abused his discretion in vesting legal custody in the Department instead of placing the children in her home under protective supervision given that she was willing and able to care for the children and that John Doe was the sole abuser, had been arrested, was held in jail on a $100,000.00 bond and was the subject of a protective order.

11

At a CPA adjudicatory hearing, if the court finds that the child comes within the court's jurisdiction, the court has the discretion to either place the child under protective supervision in his own home or vest legal custody of the child in the Department or other authorized agency. I.C. §§ 16-1619(4) to (5). In making this decision, "the court shall consider any information relevant to the disposition of the child." I.C. § 16-1619(5). If the court vests legal custody in the Department, the court is instructed to make "detailed written findings based on facts in the record, that . . . continuation of residence in the home would be contrary to the welfare of the child and that vesting legal custody with the department or other authorized agency would be in the best interests of the child." I.C. § 16-1619(6). The court is authorized to issue or extend a protective order as part of the decree in order to preserve family unity and to protect the child's interests. I.C. § 16-1619(9).

The magistrate decreed, in relevant part:

> It is contrary to the welfare of the children to remain in the home. It is in the best interest of the children to vest legal custody of the children in the [Department]. No safety plan was advanced by any party as to how the children could go home or remain in the home with one parent and be safe. The Court makes this finding based on the information set forth in the affidavit prepared by Carol Jeffries and dated October 1, 2009 which is incorporated by reference in this order and the testimony and exhibit at trial.
>
> The children's mother [Jane Doe] chose to invoke her 5th amendment right to not incriminate herself. She has every right to do this however, it left issues of the children's safety unresolved, these include the mother's ability or willingness to protect these children. In this case one parent horribly abused an infant child. There are no allegations or evidence that the children's mother abused the child. She has not been charged of any crime. She may well be a victim of the vicious conduct of her husband. Her apparent innocence does not stop the Court from action to protect the children.
>
> The Court orders the Department to make reasonable efforts to return the children to the mother. For the Court to allow the return home it must be assured for the Court that children will be safe and that the mother will choose the children over the influence of her husband.

Jane Doe argues that the magistrate impermissibly shifted the burden on her to prove she was a fit parent. We agree. Because the right to parent one's children is a fundamental right, we presume that a parent is fit to care for their child and that it is in the child's best interest to live with their parents. In *Martin v. Vincent*, which involved an alleged wrongful detention of a child, this Court explained:

> The right of a parent to the custody, control, and society of his child is one of the highest known to the law. The family is a unit of society and is so

recognized by the state. The parents of children are recognized as their natural guardians, and the presumption is that they are fit and proper persons to exercise that trust. It is incumbent upon him who seeks to invade the home and remove a child from its protection, and from the custody of its natural guardians to show facts sufficient to justify his action under the law. Parents are not required in the first instance to take upon themselves the burden of proving their fitness to have the care of their children, or that they are properly exercising their parental control.

34 Idaho 432, 435–36, 201 P. 492, 493 (1921).

It seems that the magistrate failed to fully recognize the different standards for taking jurisdiction over a child pursuant to I.C. § 16-1603 and the standard for vesting custody in the Department pursuant to I.C. § 16-1619. For a child to be within the court's jurisdiction pursuant to I.C. § 16-1603(1)(a), the Department must show that a child has been abused, neglected or abandoned by his parents, and we held earlier in this opinion that the Department need only show that one parent abused the child. Whereas, when deciding whether to order protective supervision or to vest legal custody in the Department pursuant to I.C. § 16-1619, the court is to consider any information relevant to the disposition of the child in order to determine whether remaining home is contrary to the child's welfare and whether it is in the child's best interests to vest custody in the Department. I.C. §§ 16-1619(5) to (6). This standard puts a different burden on the Department. Evidence that the child has been abused by one parent, which suffices for jurisdiction, is not necessarily enough, by itself, to show that remaining home is contrary to the child's welfare and that vesting legal custody in the Department is in the child's best interest.

In this case, there were no allegations that Jane Doe abused, neglected or abandoned her children. The magistrate recognized these facts but felt that there were not adequate assurances that the children would be safe at home without a safety plan yet in place and feared that Jane Doe would choose the children over her husband. There was no direct evidence that Jane Doe would choose her husband over her children. The magistrate seems to have inferred that Jane Doe might chose to protect her husband over the children based on Jane Doe's assertion of her Fifth Amendment rights. We note that it is generally permissible in civil cases to make inferences against someone who invokes her Fifth Amendment rights. *See Baxter v. Pamigiano*, 425 U.S. 308, 318–19 (1984) (holding that prison officials could draw reasonable inferences from prisoner's silence in prison disciplinary proceeding case, because such a case is not criminal in nature). In this case, however, any inferences that could have been drawn from Jane Doe's invocation of her Fifth Amendment rights were not enough to support a finding that it

would be contrary to the children's welfare to be placed in her care. John Doe was the sole abuser, and he was in jail and subject to a protective order. The Department put forth no evidence suggesting Jane Doe could not care for her children. There was no evidence of Jane Doe's complicity in inflicting the injuries on Son or that she was aware of John Doe's violent behavior toward Son when the injuries were being inflicted, and the evidence showed she took appropriate, timely action to protect Son after he sustained the injuries.

While the magistrate was rightly concerned for the children's safety in light of the horrific abuse suffered by Son, protective supervision affords sufficient protection in a case like this. Protective supervision allows the children to remain home but under the supervision of the Department. I.C. § 16-1602(29). Where a child has been placed under protective supervision of the Department, the court can order the child to be removed from the home if facts are presented showing both that continuation in the home would be contrary to the child's welfare and that vesting legal custody would be in the child's best interests. I.C. § 16-1623. At the adjudicatory hearing, the magistrate abused his discretion in vesting custody in the Department. The Department did not put forth substantial and competent evidence to support a finding that it was contrary to the welfare of the children to remain in the home and that it is was in the best interests of the children to vest legal custody in the Department. Thus, the children should have been placed in Jane Doe's care under the protective supervision of the Department.

## VII. CONCLUSION

We affirm the magistrate in taking jurisdiction of Son and Daughter, first at the shelter care hearings, and later at the adjudicatory hearing, based on John Doe's abuse of Son and Daughter's exposure to that abuse, even though Jane Doe did not take part in the abuse and was willing and able to care for her children. However, we reverse and vacate the magistrate's decision vesting legal custody in the Department at the adjudicatory hearing. Jane Doe is presumed to be a fit parent, and there was insufficient evidence for the magistrate to find that placing the children in Jane Doe's care under the protective supervision of the Department was contrary to the children's welfare and that vesting custody in the Department was in their best interests.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**

14