# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket Nos. 38534, 38536, 38567

IN THE MATTER OF THE TERMINATION )
OF THE PARENTAL RIGHTS OF JOHN )
(2011-03) DOE. )
-------------------------------------------------------- )
IDAHO DEPARTMENT OF HEALTH & )    Supreme Court Docket No. 38534
WELFARE, )
   )
     Petitioner-Respondent on Appeal, )    Boise, June 2011 Term
   )
and )    2011 Opinion No. 90
   )
GUARDIAN AD LITEM, )    Filed:  August 8, 2011
   )
     Respondent on Appeal, )    Stephen W. Kenyon, Clerk
   )
v. )
   )
JOHN (2011-03) DOE, )
   )
     Respondent-Appellant, )
   )
and )
   )
JANE DOE and JOHN DOE I, )
   )
     Respondents. )
_____ )
IN THE MATTER OF THE PARENTAL )
TERMINATION OF JANE (2011-04) DOE. )
-------------------------------------------------------- )
IDAHO DEPARTMENT OF HEALTH & )    Supreme Court Docket No. 38536
WELFARE, )
   )
     Petitioner-Respondent, )
   )
and )
   )
GUARDIAN AD LITEM, )
   )
     Respondent on Appeal, )

|  |  |  |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | |
| JANE (2011-04) DOE, | ) | |
| | ) | |
|    Respondent-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOE and JOHN DOE I, | ) | |
| | ) | |
|    Respondents. | ) | |
| _____ | ) | |
| IN THE MATTER OF THE TERMINATION OF PARENTAL RIGHTS OF JANE (2011-06) DOE. | ) | |
| | ) | |
| ------------------------------------------------ | ) | |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) | Supreme Court Docket No. 38567 |
| | ) | |
|    Petitioner-Respondent on Appeal, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GUARDIAN AD LITEM, | ) | |
| | ) | |
|    Respondent on Appeal, | ) | |
| v. | ) | |
| | ) | |
| JANE (2011-06) DOE, | ) | |
| | ) | |
|    Respondent-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOE and JOHN DOE I, | ) | |
| | ) | |
|    Respondents. | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. R. Barry Wood, Senior District Judge.

Trial court's findings of fact and order terminating parental rights, <u>affirmed.</u>

Williams Law Office, Ctd., Twin Falls for appellant John (2011-03) Doe.

Twin Falls County Public Defender's Office, Twin Falls for appellants Jane (2011-04) Doe and Jane (2011-06) Doe.  Marilyn Paul, Deputy Public Defender argued.

Jamie A. LaMure, Kimberly, argued for Guardian Ad Litem.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent Idaho Department of Health & Welfare.  James T. Baird, Deputy Attorney General argued.

_____

BURDICK, Chief Justice

Jane Doe and John Doe appeal the trial court's February 3, 2011 Findings of Fact, Conclusions of Law and Order (hereinafter "Feb. 3, 2011 Order") terminating Jane Doe's parental rights to her four children (T.S., S.S., A.H. and S.H.) and John Doe's parental rights to his two children (T.S. and S.S.) on the grounds of neglect and the best interest of the children. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

S.S. and T.S. were born to Jane Doe and John Doe in 2003 and 2006 respectively.  Jane Doe and John Doe lived together for a total of approximately eleven months.  They never married.  Eventually their relationship ended, and Jane Doe began a relationship with John Doe II.  John Doe has two other children, who are not Jane Doe's children and were not involved in the termination proceedings at issue here.  John Doe went to prison on June 21, 2007, for writing checks with insufficient funds.  He topped out his sentence on May 6, 2010.

On August 14, 2008, Detective Mittlestadt from the Twin Falls Police Department visited the residence of Jane Doe and John Doe II in response to a referral from the Idaho Department of Health and Welfare (the Department) concerning possible child abuse and marijuana sales.  At the residence, marijuana was being smoked in the presence of S.S. and T.S.  Jane Doe and John Doe II were arrested for injury to children and marijuana possession.  S.S. and T.S. were declared to be in imminent danger and were taken into State custody.

Both on the day of their arrest and at the adjudicatory hearing held on August 21, 2008, Jane Doe and John Doe II stipulated to an unstable home environment, and S.S. and T.S. were placed in the legal custody of the Department.  On May 28, 2009, S.S. and T.S. returned to the home of Jane Doe and John Doe II for an extended home visit.  A.H. was born to Jane Doe and John Doe II in 2009.  On October 16, 2009, when the Department discovered that the home was

filthy, cluttered and smelled of urine, S.S. and T.S. were placed in foster care due to an unstable home environment, and A.H. was declared to be in imminent danger.

On May 20, 2010, the Department filed a petition to terminate the parental rights to S.S., T.S., and A.H. The petition alleged that Jane Doe, John Doe and John Doe II neglected the children, failed to address substance abuse issues and home sanitation problems, failed to maintain adequate income, failed to demonstrate that they could keep the children safe, and had been hostile and uncooperative to the Department's service providers. The petition also alleged that termination would be in the best interest of the children, because Jane Doe, John Doe and John Doe II can barely support themselves, and adoptive parents can provide a more financially and emotionally stable home environment for the children.

S.H. was born to Jane Doe and John Doe II in 2010. On June 16, 2010, S.H. was declared to be in imminent danger, and a Child Protective Act (CPA) petition was filed. On June 17, 2010, S.H. was found to come within the CPA's protection, but S.H. was ordered to be returned to Jane Doe and John Doe II on an extended home visit. However, on July 7, 2010, S.H. was removed from the home based upon unsanitary conditions. On July 29, 2010, the trial court entered an order adopting a renewed case plan involving all four children and the three parents. On July 30, 2010, the Department filed a petition to terminate Jane Doe and John Doe II's parental rights in S.H. on the same grounds that it petitioned to terminate their rights in the three older children. The two termination cases were consolidated.

On February 3, 2011, the trial court issued its decision terminating the parental rights of Jane Doe and John Doe II in all four children, and terminating John Doe's parental rights in S.S. and T.S. The trial court ruled that the State established by clear and convincing evidence that the children were individually and collectively neglected by their parents and that termination was in the children's best interests.

Jane Doe and John Doe appealed to this Court. John Doe II did not appeal.

## II. STANDARD OF REVIEW

We recently set forth the relevant standard of review in *Idaho Department of Health & Welfare v. Doe*:

> Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. On appeal, this Court will not disturb the

4

magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision. Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties.

150 Idaho 36, __, 244 P.3d 180, 185 (2010) (quotations and citations omitted).

### III. ANALYSIS

A court may grant an order terminating parental rights where it finds that (1) termination is in the best interests of the child and (2) one of the statutory conditions for termination exists. Idaho Code § 16-2005(1). Neglect is one of the statutory conditions for termination. Idaho Code § 16-2005(1)(b). The trial court found that each parent neglected his or her children and that termination was in each child's best interest.

Idaho Code § 16-2002(3) defines "neglected" as:

(a) Conduct as defined in section 16-1602(25), Idaho Code; or
(b) The parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9), Idaho Code.

Idaho Code § 16-1602(25)(a) provides that "neglected" means a child: "Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them".

Idaho Code § 16-1602(25)(b) provides that "neglected" means a child: "Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being".

Both Jane Doe and John Doe argue that there was not substantial and competent evidence to support the trial court's findings of neglect. Jane Doe raises numerous other issues on appeal.

**A. John Doe.**

The trial court found that John Doe neglected S.S. and T.S., both of whom have special needs, concluding that John Doe "is barely able to provide for himself" and that termination is in both his and the children's best interests.

5

John Doe argues that the trial court's decision to terminate his parental rights in both S.S. and T.S. was not supported by substantial and competent evidence. Specifically, John Doe argues that he did not neglect the children based on the following: (1) before his incarceration, he had both telephone and physical contact with them; (2) while in prison, he arranged for telephone visits with them and made positive steps on his case plan; and (3) after his incarceration, he immediately contacted the Department, arranged for visitation, and completed most of his case plan despite facing significant difficulties. John Doe does not challenge the best interests of the children prong of the trial court's decision to terminate his parental rights.

In reaching its decision, the trial court noted that John Doe completed some of the requirements of his case plan: taking parenting classes, obtaining a substance abuse evaluation in 2007, and regularly attending supervised visits with the children after his release from prison. However, the trial court found that, even though John Doe received services under a case plan for two years and had been out of prison for over seven months on the date of the trial, John Doe "utterly and completely failed to complete the two primary requirements of his case plan": (1) providing a safe and stable home environment; and (2) providing a legal source of income for his family. John Doe admitted at trial that he does not have a suitable home environment for his children and that he has no money or job. Since his release from prison on May 6, 2010, he has "bounced between friends" for his living arrangements, and he has worked only one day and has lived off of support from friends, food banks, food stamps and clothing vouchers. He says his future plan is to return to his mother's property in Mississippi, purchase a trailer home for the property and work for $8.50 per hour on a water-well drilling rig with his brother.

In *Doe v. Department of Health and Welfare*, this Court upheld the trial court's decision to terminate parental rights where two of the primary factors upon which the trial court found neglect as defined in I.C. § 16-2005(b) were the parents' unfavorable living arrangements and employment situation. 141 Idaho 511, 513–16, 112 P.3d 799, 801–04 (2005). Similarly, in this case, John Doe admits that he does not have suitable living arrangements and employment.

In addition to John Doe's failure to establish a suitable residence and obtain adequate employment, John Doe has a criminal history, including convictions for misdemeanor injury to a child, misdemeanor assault, lack of vehicle insurance, and felony writing checks with insufficient funds. John Doe also has multiple convictions for driving without privileges, including one since his release from prison. He has no driver's license, and his driving privileges

6

are suspended. He has not been paying child support for S.S. and T.S., nor has he been paying child support for his two other children. He has not yet obtained a GED. While he was initially sentenced to probation for the felony insufficient funds conviction, he violated his probation for drinking alcohol on the job. He failed his programming under the retained jurisdiction program. He was denied parole, because as he explained, "he would rather do his time than the programming."

Despite John Doe's efforts to maintain some contact with his children and despite some progress on his case plan, we hold that the trial court had substantial and competent evidence to find that John Doe neglected S.S. and T.S. under I.C. § 16-1602(25)(a) and (b) and I.C. § 16-2002(3)(b).

John Doe argues that his case is similar to *Doe v. State*, 137 Idaho 758, 53 P.3d 341 (2002). In *Doe v. State*, the district court affirmed the trial court's decision to terminate the father's parental rights on the grounds of abandonment and neglect where the father was incarcerated on the child's date of birth, failed his rider program, never met his child, and never provided child support. *Id.* at 759–61, 53 P.3d at 342–44. This Court held that the finding of neglect and abandonment was not supported by substantial and competent evidence, finding that the Department trivialized the father's efforts to have a relationship with his son, which were significant in light of the reality of the father's "situation" (being incarcerated from birth through a significant portion of the child's life up to the time of the termination), and that the Department did "little or nothing to assist in" the father's efforts. *Id.* at 762, 53 P.3d at 345. This Court remanded the case for consideration of the evidence already presented as well as evidence of Doe's conduct since his release from the penitentiary, stating: "The record stops short of evidence as to [the father's] conduct since his release. If he has taken no steps to establish a parental relationship since his release that evidence may be considered . . . ."

The case at hand is distinguishable. John Doe was not incarcerated when his children were born, yet he did little at that time to provide parental care. While incarcerated, John Doe had phone visits with his children, but he failed to take advantage of work opportunities which could have allowed him to help provide for his children. John Doe received assistance from the Department in working on his case plan. Most significantly, there is evidence in the record of the steps John Doe has and has not taken since his release from prison, including his failure to

establish suitable living arrangements, his failure to obtain adequate employment and his conviction for driving without privileges.

Finally, John Doe claims that since his release from prison he has faced logistical difficulties which prevented him from discharging his parental duties. However, John Doe fails to point to neglect cases where logistical difficulties were deemed to excuse a parent from discharging their parental duties. John Doe relies on *Doe v. Doe*, 150 Idaho 46, 244 P.3d 190 (2010). In *Doe v. Doe*, this Court held that the trial court's finding that the father abandoned his child based upon the failure to maintain a normal parental relationship without just cause was not supported by substantial and competent evidence, because the record showed that the father had just cause based upon the fact that he did not have the time, money or requisite permission from the military to regularly visit his son. *Id.* at __, 244 P.3d at 195–96. *Doe v. Doe* is inapplicable to the case at hand because it concerns the just cause defense to abandonment; there is no just cause defense for neglect.

**B. Jane Doe.**

Jane Doe raises 13 issues on appeal. We find that the following four issues, each of which is addressed below, cover all issues Jane Doe properly raises on appeal: (1) whether the trial court's finding that Jane Doe neglected the three older children is supported by substantial and competent evidence; (2) whether the Department was authorized to petition for the termination of Jane Doe's parental rights in her youngest child and whether the court had jurisdiction over that petition; (3) whether the trial court's finding that Jane Doe neglected her youngest child is supported by substantial and competent evidence; and (4) whether the trial court erred in terminating Jane Doe's parental rights where the Department allegedly failed to inform her of her status as someone with a disability and allegedly failed to fairly assist her toward reunification with her children.[1]

---

[1] Four issues raised by Jane Doe fail to meet the requirements of Idaho Appellate Rule 35(a)(6), which provides: "The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon." *See also Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010) (we will not consider an issue which is not supported by cogent argument and authority). First, Jane Doe asserts that her equal protection rights were violated because she has been subjected to a preemptive filing of the termination petition as to the youngest child, and she is unaware of anyone else being subjected to such a filing. She cites no authority other than referencing the Fourteenth Amendment of the United States Constitution and makes no further argument. Second, Jane Doe restates the same equal protection issue. Third, Jane Doe asserts that her rights to uniform court procedure were violated. Jane Doe cites no authority other than Article V, Section 26 of the Idaho Constitution, and makes no argument on this issue. Fourth, Jane Doe argues that two of her assigned caseworkers engaged in actions which were unfairly adverse to her interest while she attempted to complete her case plans. According to Jane Doe, the caseworkers lacked a

1. The trial court's finding that Jane Doe neglected her three oldest children is supported by substantial and competent evidence.

The trial court terminated Jane Doe's parental rights on the grounds of neglect and the best interests of the children upon concluding that while Jane Doe "was very pleasant to IDHW workers, and seemed to genuinely care about the children, [she] would simply *never follow through* with the responsibilities involving the children." (Emphasis in the original). The trial court continued, "[Jane Doe] is barely able to provide for herself . . . let alone multiple children".

The trial court found that Jane Doe "has not consistently provided or been able to provide an adequate safe and stable home environment for any of her children" while the children have been in her custody and in the Department's legal custody. S.S. and T.S. were first removed from the home when a police officer found marijuana being smoked in Jane Doe's home in their presence. On more than one occasion, the children were removed from the home on the basis of its filth. The trial court also found that despite the effort and services provided by both the Department and the drug court, Jane Doe "still has insufficient resources and/or abilities to care for any of her children—financial, residential, emotional or otherwise", noting that there was "no . . . direct evidence of resources available to Jane Doe other than her nominal income from her meager employment." Additionally, the trial court found that following the adjudicatory hearing in the first child protective petition, Jane Doe was provided with many services, including in-home parenting training, and while she showed some learning, the home was quite dirty and cluttered on certain occasions, she missed scheduled visits with the children and left others early, she failed to bring appropriate things like snacks and activities to the scheduled supervised visits, she had to be reminded what to do to complete the case plan, and she did not pay support.

The trial court found that Jane Doe failed to satisfactorily complete her case plan during the approximately two-year period that caseworker Fuller oversaw the case by: (1) failing to verify her weekly attendance at Narcotics Anonymous meetings; (2) never consistently maintaining a safe, stable, drug-free home; (3) failing to maintain financial stability for her and

---

commitment to reunify her with her children, which was supposed to be brought about by the case plans, and one of the caseworkers instructed John Doe to file for custody of his children, pitting him against her. She also argues that the Department used her visitation periods to unfairly glean negative information that may have been determinative of her case, and one of the case workers did not notify Jane Doe that the caseworker had already found that Jane Doe failed the case plan and that the caseworker had already pursued termination by internally filing a Report of Investigation for Termination. While Jane Doe thoroughly cites the record to identify these allegedly unfair acts and omissions of the Department and its workers, she cites to no authority in support of her argument that the trial court erred in terminating her rights when these acts and omissions allegedly occurred.

her family; (4) failing to regularly attend therapy sessions; (5) failing to complete her substance abuse treatment; (6) failing to follow through with the recommendations from the assessments of S.S. and T.S. concerning their special needs; and (7) failing to demonstrate adequate parenting skills to keep her children safe. The trial court also found that Jane Doe failed the drug court based on six problems with her participation.

Jane Doe argues that she demonstrated her willingness and ability to care for her children. While admitting that she did not fully complete her case plan, she argues that she substantially completed a number of the requirements and that the two caseworkers involved in her cases testified that they believed she could possibly complete her case plans. She admits that she failed to submit verification of attending Narcotics Anonymous meetings and did not complete her substance abuse treatment program, but she argues that the fact that she tested negative for drugs during the two CPA cases overcomes these failures. As to the trial court's finding that she is unable to support herself, as well as any children, financially, Jane Doe argues that she was pregnant during much of time of the first CPA case, suffers mental illness, gained part-time employment in September 2010, and has increased the part-time hours she works. As to the trial court's finding that she is unable to care for her two eldest children, who suffer severe behavioral and development problems respectively, Jane Doe argues that she has demonstrated her ability to care for them by taking actions such as enrolling them in Head Start. She also argues that the trial court focused on limited instances concerning the cleanliness of her home without giving enough credit to her for the home's safety.

We recently upheld a termination on the grounds of neglect in *Department of Health and Welfare v. John Doe (2011-2)*, 2011 WL 2682907, at *11 (Idaho July 12, 2011), in which the relevant facts were similar to the facts in this case. In *John Doe (2011-2)*, we held that the failure to complete a case plan is relevant to finding neglect under I.C. §16-2002(3)(a) (based upon the definitions of neglect in I.C. § 16-1602(25)(a) and/or (b)) and is not limited to a finding of neglect under I.C. § 16-2002(3)(b). *Id.* at *8–10. We upheld the termination where:

> Although [Father] has completed several of the required evaluations, he has not demonstrated a commitment to completing parenting classes for children with behavior disorders, or to completing substance abuse treatment classes. Father has also failed to demonstrate an ability to provide stable income and employment to provide for his family.

*Id.* at *11.

Similarly, in the case at hand, Jane Doe failed to fully comply with her case plan and failed to demonstrate an ability to provide stable income and employment to provide for her family. Additionally, she has failed to find suitable housing for her children. Ultimately, Jane Doe seems to be asking this Court to reweigh evidence upon which the trial court based its decision to terminate her parental rights in her three older children. However, it is well established that:

> On appeal, the appellate court does not reweigh the evidence to determine if it was clear and convincing. Rather, "where a trial court has noted explicitly and applied a clear and convincing standard, an appellate court will not disturb the trial court's findings unless they are not supported by substantial and competent evidence." *State v. Doe*, 144 Idaho 534, 535, 164 P.3d 814, 815 (2007).

*Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010). The trial court explicitly noted and applied the clear and convincing standard, and the trial court's findings are supported by the substantial and competent evidence set forth above. We therefore affirm the trial court in terminating Jane Doe's parental rights in her three older children on the ground of neglect as defined in I.C. § 16-2002(3)(b) and I.C. § 16-16205(a) and (b).

Jane Doe also argues that the trial court improperly relied upon the fact that she chose not to testify in reaching its decision to terminate her parental rights. In the Feb. 3, 2011 Order, the trial court began his discussion concerning Jane Doe as follows:

> [Jane Doe] did not testify at the trial, and as such, the Court has no competent evidence of her future plans. Additionally, much of the evidence presented by the State regarding [Jane Doe's] failure to adequately complete her case plan and that [she] neglected each of her four children, remains uncontradicted.

In concluding this portion of the Feb. 3, 2011 Order, the trial court stated:

> Because [Jane Doe] did not testify at the termination trial, and because there was no other direct evidence of resources available to [Jane Doe] other than her nominal income from her meager employment, there is no competent evidence upon which this Court could find that [Jane Doe] can care for herself, let alone any one of her children or any combination of her children.

Jane Doe relies on *Idaho Department of Health and Welfare v. Doe I*, 2011 WL 667969 (Idaho, Feb. 25, 2011), in which we noted that it *is permissible* to draw negative inferences in a civil trial against a person who chooses not to testify. *Id.* at *10 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318–19, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810, 821–22 (1976)). In *Doe I*, we held that where there was no direct evidence concerning the mother's abuse, neglect or abandonment of her children, "any inferences that could have been drawn from [the mother's]

11

invocation of her Fifth Amendment rights were not enough to support a finding that it would be contrary to the children's welfare to be placed in her care." *Id.* The case at hand differs from *Doe I.* Upon reviewing the Feb. 3, 2011 Order, it does not appear that the trial court based his decision on any negative inferences drawn from Jane Doe's decision not to testify; rather, he references Jane Doe's decision not to testify merely to point out that there is little evidence to contradict the evidence put forth by the Department. And as already set forth, the Department's evidence is substantial and competent.

2. The Department was authorized to petition for the termination of Jane Doe's parental rights in her youngest child, and the court had jurisdiction to consider the petition.

Jane Doe argues that it was premature for the Department to file a petition for the termination of her parental rights in her youngest child S.H, because she was not given a reasonable chance to complete the case plan. According to Jane Doe, "the Department wished to simply go through the motions of preparing a case plan, with no intention of it allowing for the constitutionally and statutorily required reunification." She argues that under these circumstances, the Department is not authorized to petition for termination, the court does not have jurisdiction, and her due process rights have been violated.

The Department's authority to petition for the termination of parental rights is set forth in both the CPA (chapter 16, title 16, Idaho Code) and the termination statute (chapter 20, title 16, Idaho Code). Pursuant to the termination statute, a "petition may be filed by . . . [a]n authorized agency". I.C. § 16-2004. "Authorized agency" is defined as including "the department", which is in turn defined as "the department of health and welfare." Idaho Code § 16-2002(9) and (10). Idaho Code § 16-2003 grants courts exclusive jurisdiction over termination actions where the court has jurisdiction over the child under the CPA. Thus, pursuant to the termination statute, the Department is generally authorized to petition for the termination of parental rights, and the court has jurisdiction over such a termination proceeding as long as it has jurisdiction over the child under the CPA.

Under the CPA: "If the child has been placed in the legal custody of the department or under its protective supervision pursuant to section 16-1619, Idaho Code, the department may petition the court for termination of the parent and child relationship in accordance with chapter 20, title 16, Idaho Code." Idaho Code § 16-1624. After a CPA petition has been filed, the court must set an adjudicatory hearing to be held within thirty days, and if a preponderance of the evidence at the adjudicatory hearing shows that the child comes within the court's jurisdiction

12

under the CPA, then the court must place the child in either the legal custody of the Department or under its protective supervision. Idaho Code § 16-1619. If the court choses to place the child in legal custody of the Department, it must make additional written findings as provided in I.C. § 16-1619(6); however, if the court chooses instead to place the child under the protective supervision of the Department, it need do no more than find jurisdiction under the CPA. Thus, under the authority granted by the CPA, the Department is authorized to petition for termination if the court has jurisdiction over the child under the CPA.

Idaho Code § 16-1603 grants courts exclusive original jurisdiction in all proceedings under the CPA "concerning any child living or found within the state: (a) Who is neglected, abused or abandoned by his parents, guardian or other legal custodian, or who is homeless; or (b) Whose parents or other legal custodian fails to provide a stable home environment." In the case at hand, S.H. was found to be within the court's jurisdiction under the CPA at the adjudicatory hearing based upon an unstable home environment and was placed in the legal custody of the Department. On appeal, Jane Doe does not challenge the trial court's finding of jurisdiction over S.H. at the adjudicatory hearing. This jurisdiction is the trial court's basis for jurisdiction in these termination proceedings; therefore, we hold that the Department had the authority to pursue the termination of Jane Doe's rights in her youngest child, and the court had jurisdiction over the petition.

Jane Doe also argues that both due process and the Idaho Code require the Department to make reasonable efforts at reunification before a court can terminate parental rights. Jane Doe argues that in a case like this where there is a case plan under the CPA, the parent must be given a sufficient chance to complete the case plan before termination is pursued in order for the Department to fulfill its obligatory efforts to reunite the parent and child. Jane Doe relies on the purpose section of the termination statute, which provides in relevant part:

> (1) The purpose of this chapter is to:
>> . . .
>> (b) Provide permanency for children who are under the jurisdiction of the court through the child protective act, chapter 16, title 16, Idaho Code, where the court has found the existence of aggravated circumstances or that reasonable efforts to return the child to his or her home have failed.

Idaho Code § 16-2001. Relatedly, the policy provision of the CPA notes the importance of family unity. Idaho Code § 16-1601.

13

Both the termination statute and the CPA seek to balance aims that are sometimes in conflict—such as the best interests of the child and family unity. While the purpose provision of the termination statute suggests that the termination statute addresses only those cases where the court has found either aggravated circumstances or the failure of reasonable efforts to return the child, the purpose provision in the termination statute is not a source of specific substantive criteria for termination, and while the purpose and policy provisions may shed some light on the statutes, the specific provisions govern. As already explained, I.C. § 16-1624 explicitly authorizes the Department to file a petition to terminate parental rights after a court has placed the child in either the legal custody of the Department or under its protective supervision upon concluding the adjudicatory hearing pursuant to I.C. § 16-1619. Upon conclusion of the adjudicatory hearing in this case, the trial court found that it had jurisdiction and placed S.H. in the legal custody of the Department. Thus, at this point, the Department was authorized to petition for termination. And, whether the Department had enough admissible evidence to support the clear and convincing standard for termination was not at issue at this moment in time; this issue was left to the trial process, affording Jane Doe the requisite due process protections.

Jane Doe also relies on the time standard under the definition of neglect in I.C. § 16-2002(3)(b), which provides that neglect means: "The parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9), Idaho Code." Idaho Code § 16-1629(9) provides that "[t]here shall be a rebuttable presumption that if a child is placed in the custody of the department and was also placed in out of the home care for a period not less than fifteen (15) out of the last twenty-two (22) months from the date the child entered shelter care, the department shall initiate a petition for termination of parental rights."

Idaho Code § 16-2002(3)(b) sets forth one of three definitions of neglect, each of which definitions are independent bases upon which a parent's rights may be terminated. As set forth in the next section (*infra* Part B.3), we affirm the trial court's termination of Jane Doe's parental rights in her youngest child based on neglect as defined in both I.C. § 16-1602(25)(a) and (b), not as defined in I.C. §16-2002(3)(b). Therefore, the time standard referenced in I.C. § 16-

14

2002(3)(b) has no bearing on this decision, and the definitions of neglect in I.C. § 16-1602(25)(a) and (b) do not contain a time standard.

    3. <u>There is substantial and competent evidence in support of the trial court's finding that Jane Doe neglected her youngest child.</u>

The trial court ruled that the Department is entitled to rely upon the course of conduct of the parents involving the three older children to support terminating the parents' rights in S.H., the youngest child. Jane Doe acknowledges that evidence concerning the other three children can be considered by the trial court, but she contends that this evidence alone cannot suffice to support the termination of her rights in another child—S.H. Jane Doe argues that the trial court's decision to terminate her rights in S.H. was based upon the evidence concerning the three older children in violation of her due process rights.

First, the trial court did *not* base his decision solely upon evidence from the other CPA case involving the three older children. S.H. was initially removed from his home after an in-home risk assessment by a Department caseworker found animal feces, a strong odor of urine and general filth and clutter at Jane Doe's home three days after S.H.'s birth. These conditions were a continuation of Jane Doe's habits which led the Department to act with respect to the three older children approximately one year prior. S.H. returned to Jane Doe's home on an extended home visit, but less than one month later, S.H. was again removed from her home based upon unsanitary conditions. While Jane Doe finally obtained marginal employment in September of 2010, the trial court found that her part-time job was "clearly insufficient to support any child or combination of children." The trial court also noted that Jane Doe and John Doe II recently lost the last family residence they occupied together and that Jane Doe moved in the late summer of 2010 into a friend's residence, which her own sister testified was not safe or suitable for children. At the time of the termination trial, Jane Doe lived in an apartment with both her biological father and her stepfather, which was also deemed to be an unsuitable home for a child.

Second, nothing prohibits basing a decision to terminate on conduct related to the other CPA case, as long as that evidence suffices to show that Jane Doe neglected S.H. "Neglected" is defined in I.C. §16-1602(25), in relevant part, as a child:

> (a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them . . . ; or

15

(b) Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being . . . .

Evidence that Jane Doe merely is involved in another CPA proceeding involving other children might not be highly probative as to whether the child in the present case has been neglected. However, specific evidence from another CPA proceeding concerning Jane Doe's ability at present to provide parental care and control may be probative of neglect as defined in I.C. § 16-16025(a) or (b), particularly in a situation like this where the facts of the case involving the three other children overlap temporally with the case involving S.H.

We hold that the trial court's finding that Jane Doe neglected S.H. under I.C. § 16-1602(25)(a) and (b) is supported by substantial and competent evidence based upon both the evidence directly concerning Jane Doe's parenting of S.H., set forth earlier in this section, as well as the evidence concerning her ability to parent her three older children, set forth in *supra* Part III.B.1.

Jane Doe also argues that by allowing the State to rely on the evidence concerning the case of the three older children, the trial court impermissibly put the burden on her to prove that she is capable to parent her youngest child. Jane Doe fails to recognize the difference between putting the burden of proof on the wrong party and finding that the party with the burden of proof met its burden. The trial court found, based upon the evidence concerning the three other children and the evidence directly concerning S.H., that the Department met its burden to prove by clear and convincing evidence that Jane Doe neglected S.H. After the Department made such a showing, it was Jane Doe's burden to come forward with contradictory evidence, and as explained earlier, there was virtually no contradictory evidence in the record. *Supra* Part III.B.1.

Jane Doe next draws this Court's attention to *Idaho Department of Health and Welfare v. Doe II*, where this Court held that there need not be a showing of actual harm or the risk of harm in order to terminate parental rights on the ground of neglect. 150 Idaho 36, 42, 244 P.3d 180, 186 (2010). Jane Doe correctly points out that *Doe II* was decided based on neglect as defined pursuant to I.C. § 16-2002(3)(b); whereas, here, Jane Doe neglected S.H. as defined in I.C. § 16-1602(25)(a) or (b). Due to this distinguishing feature, Jane Doe suggests that holding of *Doe II* does not apply. However, in *Doe II*, this Court reached its decision based on the fact that the language of I.C. § 16-2002(3)(b) "does not require the court to make a finding of actual harm or a risk of harm before finding neglect." 150 Idaho at 42, 244 P.3d at 186. Similarly, neither I.C.

§ 16-1602(25)(a) nor (b) require the court to making a finding of actual harm or risk of harm; these provisions define a "neglected" child, in short, as a child who either is without proper parental care and control or has no parents who are able to discharge their parental responsibilities.

Finally, Jane Doe argues that her fundamental right to parent S.H. is violated by terminating her rights in S.H. shortly after S.H. was born, because she has not been given a chance to demonstrate her ability to provide S.H. the necessary parental care. While Jane Doe has a fundamental right to parent her child, Idaho's termination statute does not violate that fundamental right. In order to terminate parental rights based on neglect, the trial court must find that the Department proved by clear and convincing evidence that the parent neglected her child and that termination is in the child's best interest. *Id.* at 42, 244 P.3d at 186. This standard suffices. Generally, it may be more difficult for the Department to prove by clear and convincing evidence that a parent neglected her child as defined in I.C. § 16-1602(25)(a) or (b) when the child is very young; however, so long as the Department meets that burden, the parent's due process rights have not been violated.

4. The trial court did not err in terminating Jane Doe's rights where the Department and/or its caseworkers failed to notify her that she was disabled under applicable law.

Jane Doe asserts that she was unfairly disadvantaged in both CPA cases because the Department lacked any procedure for determining whether she was disabled, which allegedly made it more difficult for her to complete her case plans. In February 2009, Jane Doe was evaluated by a clinical psychologist, who diagnosed her with Bipolar I Disease and generalized anxiety disorder. According to Jane Doe, she was never notified of any change in her status under Idaho law as the result of her evaluation, and the Department did not treat her as it should have treated her given her status as a disabled person.

Under the CPA, Idaho Code § 16-1619 provides: "At the adjudicatory hearing, parents or guardians with disabilities shall have the right to introduce admissible evidence regarding how use of adaptive equipment or supportive services may enable the parent or guardian to carry out the responsibilities of parenting the child by addressing the reason for the removal of the child." Under the termination statute, Idaho Code § 20-2005(6) provides in relevant part: "If the parent has a disability, as defined in this chapter, the parent shall have the right to provide evidence to the court regarding the manner in which the use of adaptive equipment or supportive services will enable the parent to carry out the responsibilities of parenting the child." "Disability" is

17

defined under Idaho Code §16-1602(14) as, in relevant part, "any mental or physical impairment which substantially limits one (1) or more major life activity of the individual including, but not limited to, self-care, manual tasks, walking, seeing, hearing, speaking, learning or working, or a record of such an impairment, or being regarded as having such an impairment."

Neither the CPA nor the termination statute imposes a requirement on the Department to notify Jane Doe of her status as a disabled person. As a disabled person, Jane Doe is statutorily granted a right to put forth evidence during the adjudicatory hearing and the termination proceedings regarding the manner in which adaptive equipment or supportive services would assist her in discharging her parental responsibilities. Jane Doe does not argue that the trial court denied her this right. She had the opportunity to put forth evidence of adaptive equipment or supportive services which could assist her in providing proper parental care despite her disabilities. Jane Doe does not point to any such evidence which was put forth but which the trial court failed to consider in finding neglect, and we do not see any indication that the trial court treated her unfairly due to her disability. Therefore, we hold that the trial court did not err.

## IV. CONCLUSION

We affirm the trial court's order terminating John Doe's and Jane Doe's parental rights.

Justices J. JONES, W. JONES, HORTON and TROUT, Pro Tem, **CONCUR.**