# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket Nos. 50868 & 50897

| | | |
|---|---|---|
| In the Matter of: John Doe I, <br> A Child Under Eighteen (18) Years of Age. <br> ------------------------------------------------------- <br> STATE OF IDAHO, DEPARTMENT OF <br> HEALTH AND WELFARE, <br><br>   Petitioner-Respondent, <br><br> v. <br><br> JANE DOE (2023-24), <br><br>   Respondent-Appellant. <br> _____ <br><br> In the Matter of: John Doe I, <br> A Child Under Eighteen (18) Years of Age. <br> ------------------------------------------------------- <br> STATE OF IDAHO, DEPARTMENT OF <br> HEALTH AND WELFARE, <br><br>   Petitioner-Respondent, <br><br> v. <br><br> JOHN DOE (2023-26), <br><br>   Respondent-Appellant. <br> _____ | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br><br> Boise, September 2023 Term <br><br> Opinion Filed: October 27, 2023 <br><br> Melanie Gagnepain, Clerk |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County, Courtnie Tucker, Magistrate Judge.

The adjudicatory decree of the magistrate court is <u>affirmed</u>.

Boyles Law, PLLC, Sandpoint, for Appellant John Doe. D. Colton Boyles submitted argument on the briefs.

Aaron Bazzoli, Chief Public Defender, Caldwell, for Appellant Jane Doe. Cassandra Wright submitted argument on the briefs.

1

Raúl R. Labrador, Idaho Attorney General, Caldwell, for Respondent State. Teri Whilden submitted argument on the briefs.

_____

BRODY, Justice.

This is a consolidated appeal involving Idaho Code section 16-1603(2), a statute authorizing the magistrate court to take jurisdiction of a child who lives in the same household as another child who is subject to an existing petition under the Child Protective Act ("CPA"). In this appeal, we address a challenge to a magistrate court's decision to take jurisdiction of an infant after finding that the infant was "at risk of being a victim of abuse, neglect, or abandonment."

The Idaho Department of Health and Welfare ("IDHW" or "Department") filed a CPA petition pursuant to Idaho Code section 16-1603(2) in March 2023 for an infant ("Infant") who was about three months old. The magistrate court had jurisdiction over the infant's older brother ("Toddler"), having removed Toddler at age eighteen months after determining Toddler had been physically abused, neglected, and subjected to an unstable home. Infant was born about four months after Toddler was placed in foster care. At the adjudicatory hearing pertaining to Infant, the magistrate court made the following findings of fact: (1) Mother and Father had failed to make any progress whatsoever on the case plan associated with Toddler; (2) Mother and Father were unresponsive and uncooperative with the Department; (3) none of the safety issues that were identified as part of Toddler's removal had been alleviated; and (4) Mother and Father had consistently failed to comply with a court order for drug testing (including a urinalysis and hair follicle testing). Based on these findings, the magistrate court held Infant was "at risk of being a victim of abuse or neglect" and was subject to the magistrate court's jurisdiction under Idaho Code section 16-1603(2). For the reasons discussed below, we affirm the magistrate court's decision.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father (collectively, "Parents") are the parents of two boys, Toddler and Infant. Toddler was born on February 20, 2021. While in the hospital following Toddler's birth, Mother tested positive for methamphetamine and THC, and Toddler tested positive for amphetamine and methamphetamine. About a month later, the magistrate court issued an adjudicatory decree, placing Toddler in the protective custody of the Department. Father did not work with the Department to complete the tasks assigned him as part of the adjudicatory decree, and he continued to test positive for drugs. However, after Mother completed her tasks in October 2021, Toddler

2

returned home, and that case was closed.

On June 6, 2022, when Toddler was about sixteen months old, the Department again became involved with the family after receiving a report that Toddler was in the emergency room with a broken femur, which required surgery. Mother left the hospital while Toddler was in surgery and did not return to visit him at any time. Father never went to the hospital. While Toddler was still in the hospital, a St. Luke's Children at Risk Evaluation Services ("CARES") physician noted that Toddler not only presented with a fractured femur, but also facial bruising and thigh bruising, and exhibited a "failure to thrive." At the adjudicatory hearing held on August 11, 2022, the physician testified as to the nature of Toddler's injuries and medical condition, expressly rejecting Mother's explanation for the broken femur as caused by her eight-year-old daughter dropping Toddler. The physician testified that the broken femur was "a severe injury… [which] would require significant external forces and was inflicted in order to result in the break[.]" The physician's testimony, which was not contradicted by any other medical expert, was relied on by the magistrate court, which found the nature of Toddler's broken femur "indicated a high force break…not commonly seen in children, [and] not the result of normal child activity." Likewise, the patterned bruising on Toddler's face and left thigh also could not be explained by normal childhood activity but was indicative of inflicted injuries. Based on these findings, the magistrate court concluded that Toddler had been physically abused.

In addition, the magistrate court concluded that Toddler had been neglected and lived in an unstable home based on Toddler's failure to thrive and concerns regarding Parents' capabilities to protect Toddler from abuse. Specifically, the magistrate court found that Parents had been alerted to Toddler's poor diet and lack of weight gain between January 2022 and April 2022 but had failed to attend a follow-up medical appointment, discontinued treatment with Toddler's pediatrician due to their own mistrust, and failed to establish care with a new physician. Additionally, hair follicle testing on Toddler revealed that he had again been exposed to methamphetamines. The magistrate court also expressed concern regarding Toddler's developmental delays, including "limited mobility and issues with speech and feeding." Finally, the magistrate court noted that Parents were uncooperative with the Department, failed to make arrangements to visit Toddler at all since he was first taken to the hospital, failed to maintain "open communication or cooperation with the department whatsoever," and failed to comply with the court order to submit themselves to drug testing. Consequently, on August 11, 2022, the magistrate court placed Toddler in the protective

3

custody of the Department. As of the filing date for this appeal, Toddler's case is still open, and he remains in foster care with a goal of termination of parental rights due to Parents' lack of progress on the case plan, lack of cooperation with the Department, and refusal to comply with the court order for drug testing.

Less than four months after Toddler was removed from the home, on December 8, 2022, Infant was born. The Department did not become aware of this fact until December 28, 2022, after receiving an anonymous phone call from a family member informing the Department of Infant's birth and expressing "concerns for the child's safety." Based on the continuing safety concerns the Department had regarding Parents' substance abuse and Toddler's exposure to methamphetamines, in addition to Parents' lack of progress on Toddler's case plan, the Department became concerned for Infant's safety as well. The Department called every hospital in the Treasure Valley to determine at which hospital Infant had been born and to obtain his birth statistics, including any medical evidence of prenatal drug exposure. Likewise, the Department called pediatricians to find Infant's treating physician and to obtain medical and immunization records. Based on this investigation, the Department learned that Infant was current on both his immunizations and well-check visits and had tested negative for illicit substances immediately after birth. The Department also reached out to Parents, but Parents were unresponsive and uncooperative. Parents refused to allow anyone from the Department to see Infant. Around this same time, the Department also became aware that Father had an active warrant for his arrest for possession of drug paraphernalia.

On March 9, 2023, the State filed a CPA petition involving Infant, alleging jurisdiction under Idaho Code section 16-1603(2). The petition requested that the magistrate court take judicial notice of Toddler's open child protection case, as well as Toddler's previous 2021 case. Sometime after this, Parents allowed a social worker from the Department to have a "video visit" with Infant. The State filed an amended petition about a month later, which contained the same request for judicial notice of the same documents as the original petition.

At the adjudicatory hearing on May 10, 2023, the State requested that the magistrate court take judicial notice of both of Toddler's CPA cases. Mother and Father both objected, with Mother arguing that the magistrate court could not take judicial notice of the entire case file and Father arguing that it was unclear what facts the magistrate court would be taking judicial notice of. The State responded that the request for judicial notice was to "acknowledge that the file exists," and

4

clarified that the request for judicial notice was specific to the adjudicatory decrees entered in each case and the magistrate court's findings of fact associated with those adjudicatory proceedings. The magistrate court granted the State's motion and took judicial notice of the adjudicatory decrees and the factual findings in Toddler's 2021 and 2022 cases.

The State then proceeded to question its first and only witness, the Department's social worker assigned to both Toddler's and Infant's cases. The social worker testified to Parents' lack of progress with Toddler's case plan, general uncooperativeness, and Parents' refusal to allow anyone from the Department into the home or to see Infant in person. She also testified that she had become aware that Father had an arrest warrant "for illicit substances." She stated that she was concerned for Infant because she did not know who was taking care of Infant and none of the safety issues had been addressed with respect to Toddler.

At the conclusion of the State's case-in-chief, Father moved for a directed verdict under Idaho Rule of Civil Procedure 50, which Mother joined. Father argued the Department lacked "any particular articulable facts related to or risks directly to [Infant's] safety." He further argued that "[e]verything is just hinged upon a lack of progress on the previous plan," and that the State was "unconstitutionally flip[ping] the presumption" that Parents are fit by asking Parents "to prove that [Infant] is safe." The magistrate court summarily denied the motion without explanation.

Mother then presented her defense by testifying and admitting into evidence Infant's medical records. Mother testified about Infant's feeding schedule (noting she bottle feeds) and diaper changes and testified that she had adequate supplies. She also testified about her stable employment. On cross-examination, Mother denied ever having a "substance abuse problem" and claimed "there are false allegations with regards to substance abuse." She did not deny "hav[ing a] history with methamphetamine." Mother also admitted that Father uses marijuana and "drugs are in and around [the] home." On redirect, Mother explained that she bottle feeds because she works in the early morning. Father did not present any evidence and declined to testify. The State then moved for the magistrate court to take judicial notice of the criminal complaint against Father for possession of drug paraphernalia. Father objected because he had not reviewed it and was concerned it contained mere allegations as opposed to substantiated facts. Over Father's objection, the magistrate court took judicial notice of the criminal complaint.

At the conclusion of the May 10, 2023, adjudicatory hearing, the magistrate court concluded that Infant fell within the jurisdiction of the Child Protective Act pursuant to Idaho Code

section 16-1603(2). This determination was based on the facts that Infant (1) was a child living in the state and (2) was also living in the same household, with Mother and Father, as did Toddler, over whom the magistrate court had taken jurisdiction. The magistrate court explained that it had taken judicial notice of the adjudicatory decree and findings of fact made regarding Toddler, specifically referencing the fact that Toddler was in the protective custody of the Department due to neglect, physical abuse, and an unstable home. The magistrate court also found that Toddler had been removed from his parents' home twice and had twice been exposed to illegal substances. The magistrate court noted the case plan for Toddler, which included "that parents would obtain a substance abuse evaluation and follow the recommendations, mental health evaluations and follow the recommendations, engage in drug testing or substance abuse testing as requested and ordered by the [c]ourt and also engage in protective parenting class." The magistrate court determined that Parents had not resolved any of the concerns regarding Toddler:

> Since that time, neither parent has engaged in any task of the case plan in [Toddler's] case. There has been no testing, there have been no assessments, there have been no classes. There has been no engagement by either parent in that case to any significant degree or any meaningful degree whatsoever.

> Parents have been unresponsive to the Department and uncooperative. None of the safety issues that were identified through [Toddler's] removal have been alleviated through the course of [Toddler's case].

Acknowledging that Infant was current on his immunizations, had been seeing a doctor on a regular basis, tested negative for illegal substances at birth, and had adequate supplies, the magistrate court explained that it still had questions regarding Infant's safety due to Parents' lack of cooperativeness with the Department:

> However, very little is known of [Infant's] home environment due to the uncooperative nature of both parents. Parents have controlled the access that the Department has to [Infant]. Department has not been allowed in the home.

> The Department has only seen what parents allow them to see. And really, this has come of late. …What is not known and what can't be seen is whether parents are making any progress with sobriety or if they are actively using.…

> What the Department does not know is who [Infant] is spending time with in the home, although it has been stated today that [Father] does care for the child as well as [Mother's daughter by another father], who were both—there are many parallel circumstances with [Toddler's] case. I think [Mother's daughter] and [Father] were both named as caregivers in [Toddler's] case at the time that he entered foster care.

> Most concerning is that the Department cannot ascertain, based on the information that has been provided or made available, whether or not [Infant] is being exposed

6

to substances. [Infant] is extremely vulnerable as he is an infant, a tiny infant. And there is a concern because of many parallel circumstances as to [Toddler's] case when [Toddler] did enter into care.

The magistrate court's conclusion that Infant is a tiny infant may be related to age but can also be drawn from the medical records admitted by Mother, demonstrating that Infant was in the thirty-sixth percentile for weight two months after birth, and at four months, Infant's weight had declined to the twenty-third percentile. The magistrate court explained that, while a drug screen had been conducted at birth, Parents continuously refused to comply with the standing court order in Toddler's case for additional drug testing. Finding that safety concerns could potentially be alleviated with drug testing and cooperativeness with the Department, the magistrate court ordered protective supervision with the Department, but allowed Infant to remain in the home with Mother and Father. Mother and Father both appealed, appearing separately. Because each appeal arises out of the same events, raises the same facts, and presents related issues, they have been consolidated in this opinion.

## II. ANALYSIS

### A. The magistrate court did not err in taking judicial notice of the adjudicatory decrees and findings of facts from two prior CPA cases involving Parents and Toddler.

Father first contends the magistrate court erred in taking judicial notice of specific documents and facts arising out of the two prior child protection cases involving Parents and Toddler. He argues the State's request for judicial notice was neither timely nor specific, and the magistrate court's ruling failed to identify the specific documents or items judicially noticed. He further argues that the magistrate court abused its discretion by "revealing *sua sponte* the facts [the magistrate court judicially noticed] after the presentation of the appellant's cases in chief[.]" Father contends that, as a result of the State's and magistrate court's lack of specificity, he "was deprived of any meaningful opportunity to address the facts the court took judicial notice of during cross of the State's witness or during his case in chief."

In response, the State argues that it was specific as to which documents it was requesting —specifically, the written orders and oral fact findings arising out of the adjudicatory hearings in Toddler's child protection cases. The State asserts that Father was on notice as to the facts judicially noticed because Father was a party in both cases and was also present at both adjudicatory hearings when the magistrate court made its findings. Thus, the State argues that all

facts judicially noticed were "generally known" by all parties in the courtroom pursuant to Idaho Rule of Evidence 201(b).

Whether a court erred in taking judicial notice is an evidentiary question this Court reviews under an abuse of discretion standard. *Rome v. State*, 164 Idaho 407, 413, 431 P.3d 242, 248 (2018). Idaho Rule of Evidence 201 provides the types of facts which a court may judicially notice, as well as the procedure for requesting the court to take judicial notice. Rule 201 pertains only to "adjudicative facts." I.R.E. 201(a). "An 'adjudicative fact' is a 'controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties.'" *Bass v. Esslinger*, 171 Idaho 699, 525 P.3d 737, 742-43 (2023) (alteration omitted) (quoting *State v. Lemmons*, 158 Idaho 971, 974, 354 P.3d 1186, 1189 (2015)). Rule 201 states in part:

> (b) **Kinds of Facts that may be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:
>> (1) is generally known within the trial court's jurisdiction;
>> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
>
> (c) **Taking Notice.** The court:
>> (1) may take judicial notice on its own; or
>> (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.
>
> When a court takes judicial notice of records, exhibits, or transcripts from the court file in the same or a separate case, the court must identify the specific documents or items so noticed. When a party requests judicial notice of records, exhibits, or transcripts from the court file in the same or a separate case, *the party must identify the specific items for which judicial notice is requested* or offer to the court and serve on all parties copies of those items.

I.R.E. 201(b)-(c) (emphasis added).

As an initial matter, Father did not specifically raise a timeliness objection to the State's request for judicial notice at any time during the adjudicatory hearing. Father did, however, raise a general objection to all requests for judicial notice. Setting aside any preservation issue that might exist because of Father's failure to specifically argue timeliness, we reject his argument on appeal.

To support his timeliness contention, Father cites to Idaho Rule of Civil Procedure 7(b)(3)(A), which requires that a written motion be filed at least 14 days prior to a designated hearing date. However, Father fails to consider Idaho Rule of Civil Procedure 7(b)(1)(A), which

8

provides that motions may be made during a hearing or trial. This provision is consistent with Idaho Rule of Evidence 201(d), which provides that a court "may take judicial notice *at any stage* of the proceeding." (Emphasis added).The State made an oral motion for judicial notice during the adjudicatory hearing on April 27, 2023. Moreover, in the CPA petition filed on March 9, 2023, the State requested that the magistrate court "take judicial notice of the current open child protection case with [Infant's] parents . . . and a previous case with the same sibling[.]" Thus, Father had more than two weeks' notice that the State was asking the magistrate court to take judicial notice of adjudicative facts from Toddler's two CPA cases.

Father next argues that the State's request for, and the magistrate court's ruling on, judicial notice was improper because it lacked specificity based on this Court's holding in *Rome v. State*, 164 Idaho 407, 416, 431 P.3d 242, 251 (2018). Father's reliance on *Rome* is misplaced.

*Rome* involved a petition for post-conviction in relief in which Rome requested the court take judicial notice of the following:

> (1) The "trial transcript" from his underlying criminal case;
> (2) The "appellate briefs" from his direct appeal;
> (3) "Prior conviction records" from his underlying case;
> (4) "[E]xhibits showing past alleged crimes" from his underlying criminal case;
> (5) "The Clerk's Record on Appeal" from his direct appeal;
> (6) The court's complete file from his underlying criminal case;
> (7) The "court file" in *State v. George*.

*Id*. at 414, 431 P.3d at 249 (alteration in original). This Court held that Rome's requests lacked specificity and were overbroad, noting that none of Rome's requests specified that they pertained only to adjudicative facts or facts "not subject to reasonable dispute[.]" *Id*. (citations omitted). Likewise, this Court distinguished between taking judicial notice of *documents* from a court file containing adjudicative facts as opposed to taking judicial notice of the *entire* court file; the former is permissible, whereas the latter is overbroad. *Id*. at 415-16, 431 P.3d at 250-251. Consequently, this Court held that the district court did not abuse its discretion in denying Rome's request for judicial notice. *Id*. at 416, 431 P.3d at 251.

Here, the State's initial request for judicial notice suffered from the same lack of specificity as the requests in *Rome*. Counsel for Mother and Father objected, and the State narrowed its requests in response. The State's request for judicial notice went from a request that the magistrate court take judicial notice of the existence of a CPA case involving Toddler to a request for judicial notice of specific *documents* from the CPA case files pertaining to Toddler—namely, the

9

adjudicatory decrees and oral findings of facts made at the respective adjudicatory hearings. The facts judicially noticed are "not subject to reasonable dispute" because they "can be accurately and readily be determined from" the same magistrate judge's adjudicatory decrees and oral fact findings. I.R.E. 201(b). Likewise, the adjudicatory decrees and hearing transcripts contain adjudicative facts because those facts are "controlling" and "operative" and "concer[n] the parties to a judicial or administrative proceeding," having been specifically determined by the same magistrate court in prior adjudicatory hearings. *Bass*, 171 Idaho at _, 525 P.3d at 742-43. As such, the State's request for judicial notice complies with Idaho Rules of Evidence 201(b) and (c).

Father's argument that he "was deprived of any meaningful opportunity to address the facts the court took judicial notice of during cross of the State's witness or during his case in chief" is disingenuous. Father should know all judicially noticed facts contained in the adjudicatory decrees and the oral findings of facts made in those respective proceedings because he was a party to and physically present at those proceedings. Father could have cross-examined the State's witness about her perception that he is "not responsive" to the Department and his lack of progress on his case plan with Toddler, but he chose not to do so.

As a final argument on judicial notice, Father contends that the magistrate court erred in *sua sponte* identifying the specific facts judicially noticed after the presentation of Mother's case-in-chief as opposed to when ruling on the State's request. This argument also lacks merit. Rule 201(c) does not require the court to identify the specific facts that the court is noticing, but rather only requires the court to "identify the specific documents so noticed." The magistrate court did so when it granted the State's motion at the beginning of its case-in-chief:

> The [c]ourt is comfortable taking judicial notice of … the adjudicatory decree and the [c]ourt's findings with regard to [Toddler]. And that is a current case that is pending before this [c]ourt.
>
> I did preside over the [Toddler's] adjudicatory hearing, I made the findings, I signed the decree. And so, the adjudicatory decree and the findings that are attached to that decree are also part of that decree. I will take judicial notice of those documents.
>
> With regard to [the 2021 case]…that also is a child protection case that this [c]ourt presided over regarding [Toddler]. I will take judicial notice of the adjudicatory decree in that case and the findings the [c]ourt made in that case.
>
> I personally made the findings and issues [sic] and signed the adjudicatory decree. And so, I'm comfortable taking judicial notice of that as well.

10

After the close of Parents' cases-in-chief, the magistrate court made its findings of facts pertaining to the May 10, 2023, adjudicatory hearing and restated that it "did take judicial notice of the adjudicatory decree and findings of fact that this court made with regard to [Toddler]." The magistrate court then recited a summary of the adjudicatory facts pertaining to Toddler contained within those documents and relevant to the May 10, 2023, adjudicatory proceeding, including the following:

> [Toddler] was adjudicated into the care of the Department of Health and Welfare when he was just over one year of age due to neglect, physical abuse and an unstable home. This was the second time that [Toddler] was taken into the care of the Department.

> The [c]ourt made findings of fact regarding the developmental concerns [Toddler] was exhibiting at the time that he was removed from his parents' care. He also had been exposed to illegal substances, which was proven through a positive hair follicle test of the child.

> And also very concerning was that he did have a significant unexplained physical injury for a child of his age. And that was a broken femur, amongst some other injuries.

This colloquy shows how the magistrate court applied the judicially noticed adjudicative facts to the adjudicatory proceeding involving Infant. It was not a re-adjudication of the State's request for judicial notice. The magistrate court did not abuse its discretion by taking judicial notice of the adjudicatory decrees and findings of fact pertaining to Toddler.

**B. The magistrate court's conclusion that Infant was at risk of neglect, abuse, or abandonment was supported by substantial and competent evidence.**

Mother and Father both contend the magistrate court lacked substantial and competent evidence to support its conclusion that Infant was at risk of being a victim of neglect, abuse, or abandonment under Idaho Code section 16-1603(2)(b). Specifically, Mother and Father argue that the magistrate court: (1) erred in denying the joint motion for a directed verdict; (2) impermissibly shifted the burden to Parents to show that Infant was not at risk of abuse, neglect, or abandonment; and (3) relied solely on Parents' past substance use and alleged criminal history, which was insufficient to show Infant was at risk. Each argument will be addressed in turn.

*1. The magistrate court did not err in denying the joint motion for a directed verdict.*

Father contends the magistrate court erred in denying the joint motion for a directed verdict. At the conclusion of the State's case-in-chief, Father moved for a directed verdict, arguing there

11

were no articulable risks to Infant's safety: "Everything is just hinged upon lack of progress on a previous care plan." Mother joined in the motion. The magistrate court denied the motion.

This Court applies the same standard of review as that applied by the trial court when reviewing a decision on a motion for directed verdict. *Waterman v. Nationwide Mut. Ins. Co.*, 146 Idaho 667, 672, 201 P.3d 640, 645 (2009) (citing *Gunter v. Muphy's lounge*, LLC, 141 Idaho 16, 27, 105 P.3d 676, 687 (2005)).

> This Court conducts an independent review of the evidence and does not defer to the trial court's findings. This Court must determine whether, admitting the truth of the adverse evidence and drawing every legitimate inference most favorably to the opposing party, there exists substantial evidence to justify submitting the case to the jury. The substantial evidence test does not require the evidence be uncontradicted. It requires only that the evidence be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper.

*Id*. (internal citations omitted).

At an adjudicatory hearing in a child protection case, the magistrate court must determine, by a preponderance of the evidence, whether the child comes within the court's jurisdiction under the Child Protective Act. I.C. § 16-1619(4). Section 16-1603 sets forth the bases for exercising jurisdiction:

> (1) Except as otherwise provided herein, the court shall have exclusive original jurisdiction in all proceedings under this chapter concerning any child living or found within the state:
>  (a) Who is neglected, abused or abandoned by his parents, guardian or other legal custodian, or who is homeless;
>  (b) Whose parents or other legal custodian fails to provide a stable home environment.
> (2) If the court has taken jurisdiction over a child under subsection (1) of this section, it may take jurisdiction over another child living or having custodial visitation in the same household without the filing of a separate petition if it finds all of the following:
>  (a) The other child is living or is found within the state;
>  (b) *The other child has been exposed to or is at risk of being a victim of abuse, neglect, or abandonment*;
>  (c) The other child is listed in the petition or amended petition;
>  (d) The parents or legal guardians of the other child have notice as provided in section 16-1611 Idaho Code.

*Id*. (emphasis added).

In this case, the record shows that Toddler had been removed from Parents' custody and taken into foster care approximately four months before Infant's birth. This was the second time,

in just over a year of life, Toddler had been removed from Parents' care. At the time of Toddler's second removal, he had again been exposed to methamphetamines (demonstrated through hair follicle testing), suffered a broken femur requiring surgery, and sustained other injuries indicative of physical abuse. There were also significant concerns regarding Toddler's lack of development. Toddler was placed in foster care based on specific findings that he had been abused and neglected and lacked a stable home environment.

The Department's social worker testified at the adjudicatory hearing in Infant's case that Toddler's case remains open with a current goal of termination of parental rights. She testified that the magistrate court had ordered a case plan designed to address the safety concerns that had resulted in Toddler's removal from the home. The case plan required Parents to obtain a substance abuse evaluation, submit to drug testing, address mental health concerns by obtaining a mental health evaluation, follow any recommendations, and attend protective parenting classes. As of the date of the social worker's testimony at Infant's adjudicatory hearing, neither Mother nor Father had addressed any of these protective measures in any way, and all safety concerns regarding Toddler remained.

After Infant was born, a family member became concerned for the child's safety and notified the Department about Infant's birth. The Department also became aware that Father had an active warrant for his arrest related to a criminal charge for possession of drug paraphernalia. Although the Department learned that Infant did not test positive for illegal substances at birth, the Department was still concerned about substance abuse in the home and whether the conditions of the home were safe. Parents still refused to engage with the case plan associated with Toddler, refused to respond to the Department's request for information about Infant, refused to allow the Department into the home, and refused to allow the Department to personally observe Infant, apart from a single "video visit" *after* the CPA petition had been filed. The social worker testified protective supervision would be in Infant's best interest:

> So that the [the Department] could go into the home on a regular and consistent basis to assess [Infant's] safety and monitor that [the child] is safe in [Parents'] care.

> And this is actually a policy of the Department when other children are in foster care. [The Department] usually see[s] children monthly, even if they are not in care, to assess their safety.

13

Given this evidence, we reject Father's argument that the record is insufficient to survive a motion for a directed verdict. The evidence presented satisfies the substantial evidence test because it contains "sufficient quantity" and "probative value" such that reasonable minds could indeed conclude that Infant was at risk of abuse, neglect, or abandonment. *See Waterman,* 146 Idaho at 672, 201 P.3d at 645. The "at risk" standard under Idaho Code section 16-1603(2) is a lower threshold, not to be confused with *actual* abuse, neglect, or abandonment required under section 16-1603(1). Unlike Toddler, there is no evidence indicating Infant sustained broken bones, bruising, or prenatal exposure to methamphetamine. However, there is substantial and competent evidence that Infant it at risk of being subjected to a similar unstable home environment and lack of protection as Toddler, and substantial and competent evidence connecting this unstable home environment and lack of protection to Toddler's abuse and neglect. Therefore, there is substantial and competent evidence that Infant is *at risk* of suffering similar abuse or neglect.

Toddler's removal from Parents' home a second time after sustaining the broken femur is probative of Infant's risk of abuse or neglect because of the relatively short passage of time, less than seven months, between Toddler's removal and the Department's filing of a petition for Infant. Even more probative of the risk of abuse or neglect to Infant was Mother's and Father's lack of cooperation with the Department, non-compliance with court orders for drug testing, Father's failure to address an outstanding arrest warrant involving drug paraphernalia, non-compliance with a court order to obtain mental health evaluations and follow recommendations, non-compliance with a court order to attend protective parenting classes, and Parents' failure to engage with Toddler's case plan in any meaningful way to avoid the goal of termination of their parental rights. The law does not require Infant to suffer a broken limb to conclude he is at risk. Parents' conduct since Toddler's second removal is consistent with, and has some tendency to show, continued instability, continued mental health concerns, continued substance abuse, and undeveloped protective capabilities. Because these concerns were associated with Toddler's abuse and neglect, a reasonable person could conclude that these concerns create a risk that Infant would also be a victim of abuse or neglect, especially given Parents' seeming unwillingness to accept the need to change their behavior. We therefore hold that the magistrate court did not err in denying the joint motion for directed verdict.

> 2. *The magistrate court did not shift the burden to Parents to show that Infant was not at risk of being a victim of abuse or neglect.*

14

Father and Mother both argue the magistrate court impermissibly shifted the burden to Parents to show that Infant was not at risk of being a victim of abuse or neglect. In support of this argument, Parents point to the facts that Infant was born without drugs in his system, was current on his immunizations, and current with his well-check visits. They argue that these facts demonstrate there is no direct evidence proving Infant is unsafe. Parents contend the State's reliance on the facts related to Toddler to create a risk to Infant is tantamount to requiring Parents to prove Infant is in fact safe. We disagree.

Parents rely on *Idaho Dept. of Health and Welfare v. Doe*, 151 Idaho 300, 256 P.3d 708 (2011), for the proposition that the magistrate court erred by impermissibly shifting the burden to Parents to prove that Infant was not at risk. Parents misconstrue our holding in *Doe*, however, and we conclude that the magistrate court's decision is consistent with *Doe*. *Doe* established the standards for analyzing two distinct issues under the Child Protective Act: the first is jurisdiction, or the magistrate court's (and the Department's) exercise of supervisory authority over a child; and the second is disposition—specifically, the sufficiency of the evidence necessary to remove a child from a parent's care or custody.

In *Doe*, two siblings were removed from the home and placed in the legal custody of the Department after the father had inflicted serious injuries upon the son. *Id.* at 302, 256 P.3d at 710. The father admitted to inflicting the injuries due to anger problems the father experienced when his son cried. *Id.* The mother was never present when the father inflicted these injuries, but the daughter was present at each incident. *Id.* Despite recognizing that there were no allegations that the mother abused, neglected, or abandoned her children, the magistrate court ordered both children removed from their mother's care and placed them in the legal custody of the Department. *Id.* at 302-303, 356 P.3d at 71-11. The magistrate court explained that while the mother had not abused the children herself, her innocence did not prevent the court from taking immediate strong measures to protect the children. *Id.* at 303, 256 P.3d at 711.

On appeal, we affirmed the magistrate court's decision to take jurisdiction over both children under the Child Protective Act. *Doe,* 151 Idaho at 307, 256 P.3d at 715. We explained that the stated policy of the CPA places the focus on the child: "At all times, the health and safety of the child shall be the primary concern." *Id.* at 306, 256 P.3d at 714 (quoting I.C. § 16-1601). We further explained that there is a "distinction between a finding of jurisdiction over a child and other actions the court might take pursuant to the CPA, such as removing a child from his or her

15

home and vesting legal custody in the Department." *Id*. "Taking jurisdiction over a child is an initial step under the CPA and does not dictate the disposition of the case." *Id*. Consequently, although there were no allegations of abuse, neglect, or abandonment against the mother, we held that the magistrate court correctly took jurisdiction over the son under Idaho Code section 16-1603(1) because he had been abused by his father, a person legally responsible for the care of his children. *Id*. at 307, 256 P.3d at 715. We also held that the magistrate court correctly took jurisdiction over the daughter under section 16-1603(2) because she had been exposed to abuse by being present when the father had inflicted injuries upon son. *Id*. at 308, 256 P.3d at 716. We also affirmed the magistrate court's determination that the daughter was at risk of being a victim of abuse because of the father's uncontrolled anger issues. *Id*.

Distinguishing the issue of jurisdiction from removal, we next held that the magistrate court erred in removing the children from the mother's care by impermissibly shifting the burden to mother to prove she was a fit parent. *Doe*, 151 Idaho at 309, 256 P.3d at 717. We explained that parenting is a fundamental right which creates a presumption of fitness to care for one's child:

> It is incumbent upon him who seeks to invade the home *and remove a child* from its protection, *and from the custody of its natural guardians to show facts sufficient to justify his action under the law*. Parents are not required in the first instance to take upon themselves the burden of proving their fitness to have the care of their children, or that they are properly exercising their parental control.

*Id*. (emphasis added) (quoting *Martin v. Vincent*, 34 Idaho 432, 435-36, 201 P. 492, 493 (1921)). The evidence showed no abuse by mother and the father (the sole abuser) was removed from the home and in jail on a $100,000 bond. *Id*. at 308-09, 256 P.3d at 316-17.

We concluded the magistrate court "failed to fully recognize the different standards for taking jurisdiction over a child pursuant to I.C. § 16–1603 and the standard for vesting custody in the Department pursuant to I.C. § 16–1619." *Id*. at 309, 256 P.3d at 717. We explained that removal from a parent's care requires the magistrate court to make "detailed written findings based on facts in the record, that... continuation of residence in the home would be contrary to the welfare of the child and that vesting legal custody with the department or other authorized agency would be in the best interests of the child." *Id*. at 308, 256 P.3d at 716 (quoting I.C. § 16–1619(6)). The evidence in the record was insufficient to conclude that vesting the children's legal custody with the Department would be in their best interest. *Id*. at 309, 256 P.3d at 717. Therefore, we held that

the magistrate court should have left the children in the mother's care under the protective supervision of the Department. *Id*. at 310, 256 P.3d at 718.

Contrary to Parents' assertions, *Doe* supports the magistrate court's decision in this case to exercise jurisdiction over Infant under Idaho Code section 16-1603(2). Father confuses the standard for exercising jurisdiction under the CPA with the standard for removing a child from a parent's custody. The impermissible burden shifting that occurred in *Doe* pertained to the magistrate court's misapplication of the standard for *removal* under section 16–1619(5), not the standard for taking jurisdiction over the children under section 16–1603. No removal has occurred in this case. Infant remains in the home under the care of Parents and the Department has protective supervision. In other words, the magistrate court's decision in this case is the same as we held should have been done in *Doe*.

Mother further argues that this case is distinguishable from *Doe* because, unlike the daughter in *Doe*, Infant was not yet born when Toddler was abused and was therefore not exposed to such abuse. In addition, Mother argues that this case is distinguishable from *Doe* because the father in *Doe* admitted inflicting injuries upon the son whereas "the cause of [Toddler's] injuries are unknown." These distinctions are irrelevant.

First, we reject Mother's characterization of the cause of Toddler's injuries as "unknown." The cause of Toddler's injuries is *not* unknown. The magistrate court found that the cause of Toddler's injuries—facial bruising, thigh bruising, and a fractured femur—was physical abuse. While it is not known *who* in the home inflicted Toddler's injuries, this point is irrelevant for purposes of determining whether Infant was at risk of abuse or neglect. The CPA does not require a magistrate court to determine the identity of the first child's abuser in order to conclude another child in the same household is at risk of being a victim of abuse or neglect under subsection 16-1603(2)(b), particularly when the same people in the home have access to both children and the same parents are obligated to protect both children from such abuse.

Next, we did not uphold the magistrate court's determination in *Doe* that the daughter fell under the jurisdiction of the CPA because the father admitted his abuse; we upheld it because there was sufficient evidence to support the findings that daughter was exposed to that abuse *and* that she was *at risk* of being a victim of abuse herself. Either one of these findings would be sufficient to take jurisdiction of a child under the CPA pursuant to subsection 1603(2)(b); a court need not find both. Thus, it is irrelevant here that Infant was not exposed to the abuse suffered by Toddler.

17

The magistrate court was permitted to, and did, take jurisdiction of Infant based solely on the conclusion that Infant was *at risk* of being a victim of abuse, neglect, or abandonment. Therefore, we hold that the magistrate court did not impermissibly shift the burden to Parents to show that Infant was not at risk.

> 3. *The magistrate court did not rely solely on Parents' past substance abuse and alleged criminal history in determining that Infant falls within the court's jurisdiction under the Child Protective Act.*

As a final argument, Father contends the magistrate court relied solely on Parents' past substance use and alleged criminal history in concluding Infant was at risk of being a victim of abuse or neglect. In support of this argument, Father cites to caselaw from Oregon and California to argue the State failed to show a nexus between Parents' prior illegal drug use and a risk of harm to Infant sufficient for the magistrate court to take jurisdiction under the CPA. Father's citations to cases outside the state of Idaho lack applicability to this case, and we decline to discuss them further. More importantly, Father's contention demonstrates a fundamental misunderstanding of the magistrate court's ruling.

First, the magistrate court did not remove Toddler based solely on Parents' past illegal drug use. The magistrate court carefully explained the multitude of reasons supporting its determination:

> [T]here were many factors that led the [c]ourt to adjudicate [Toddler] into the Child Protection Act.
>
> The injury itself, yes. But also parental substance abuse, lack of cooperation of parents, lack of transparency of parents in dealing with the Department and law enforcement. Behavior of parents at the hospital and afterward and during the course of proceedings. And there was a question about the parents' protectiveness . . . [I]t wasn't just one factor.

The magistrate court also did not hold that Infant was at risk of abuse, neglect, or abandonment based solely on the Parents' past drug use. Rather, it relied on substantial and competent evidence, as discussed in the previous section of this opinion, to find that the conditions and conduct which led to Toddler's removal were still present.

Next, there is a nexus between Parents' drug use and actual harm to Toddler because Toddler tested positive for methamphetamine not only at birth, but again at fifteen months when he was placed in the care of the Department. The magistrate court had substantial and competent evidence to conclude that a nexus between parental drug use and a risk to Infant also existed. At the adjudicatory hearing, Mother admitted a history of methamphetamine use, but denied it was

ever a problem. Mother's denial is in direct contradiction of the fact that her own methamphetamine usage was responsible for Toddler's initial removal at birth. Moreover, Mother admitted "drugs are around the home" and Father had an outstanding arrest warrant for an unspecified drug crime. The record on appeal does not support Father's assertion that the only drug around the home was marijuana "use[d] to treat[Father's] chronic pai[n]." Again, the record shows Mother had a history of methamphetamine use, Toddler had twice been exposed to methamphetamines, unspecified drugs remained around the home with Infant, and both Parents refused to comply with the court order for drug testing. Mother's statement that her history with methamphetamines was never "a problem," combined with her refusal to submit to drug testing, indicates a cavalier attitude towards methamphetamine use and the dangers such usage have posed to her children. This supports the magistrate court's finding that parental substance abuse remains a valid concern and poses a risk of abuse or neglect to Infant.

Under Idaho Code section 16-1603(2)(b), the magistrate court was required to find, by a preponderance of the evidence, that Infant was at risk of abuse, neglect, or abandonment. The magistrate court made this determination based on the facts that (1) Toddler had been removed from the home due to abuse, neglect, and an unstable home (including Toddler's methamphetamine exposure, Toddler's injuries indicative of physical abuse, Toddler's failure to thrive, and Parents' lack of protective capacities); (2) it remained unsafe for Toddler to return home; (3) Parents were uncooperative with the Department; (3) Parents refused to comply with court orders for drug testing; (4) Mother admitted drugs are around the home; (5) Parents failed to complete any tasks on Toddler's case plan whatsoever, including mental health evaluations and attending protective parenting classes; and (6) the circumstances in the home, including who is caring for Infant, were parallel to the circumstances that were present at the time of Toddler's removal. We therefore hold that substantial and competent evidence existed to support the magistrate court's conclusion that Infant was at risk of abuse, neglect, or abandonment and affirm the magistrate court's decision to take jurisdiction over Infant under Idaho Code section 16-1603(2) and ordering protective supervision by the Department.

### C. Father is not entitled to attorney fees.

Father argues he is entitled to attorney fees pursuant to Idaho Code section 12-117. However, Father is not the prevailing party and is thus not entitled to attorney fees.

19

## VI. CONCLUSION

For the foregoing reasons, we affirm the adjudicatory decree entered by the magistrate court.

Chief Justice BEVAN, and Justices STEGNER, MOELLER and ZAHN CONCUR.